JULIA R. & ESTELLE L. FOUNDATION, INCORPORATED,
PETITIONER v. COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 6263–76.    Filed April 5, 1978.

*Albert R. Mugel*, for the petitioner.
*Kenneth Bersani*, for the respondent.

## OPINION

TANNENWALD, *Judge:* Respondent determined a deficiency of $1,119.76 in petitioner's excise tax liability under section 4940(a)[1] for the taxable year ending December 31, 1973. The sole issue for decision is the extent to which the expenses of petitioner in the conduct of its operations are deductible in determining "net investment income" under section 4940(c).

All of the facts have been stipulated, and the stipulation,

---

[1]All section references, unless otherwise indicated, are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in issue.

together with the exhibits, is incorporated herein by this reference.

Petitioner had its principal office in Buffalo, N. Y., at the time it filed its petition herein. It filed its annual report (Form 990–AR) and its private foundation return (Form 990–PF) for the taxable year 1973 with the Philadelphia Service Center, Philadelphia, Pa.

During the taxable year in issue, petitioner was exempt from taxation under section 501(a) as an organization defined in section 501(c)(3). It was also a private foundation under section 509(a), but not an "operating foundation" within the meaning of section 4942(j)(3) in that it was not engaged in the active conduct of charitable functions. Its sole charitable activity, during such period, consisted of making distributions to public charitable, educational, and scientific organizations.

During 1973, the fair market value (on a monthly average basis) of the securities owned by the petitioner and cash balances was $8,205,058; it owned no assets other than assets held for the production of income subject to excise tax under section 4940, except stationery, stamps, and similar items of inconsequential value; it had gross investment income of $456,618; it received gross contributions, gifts, and grants totaling $704,168, which were entered on its books as "gifts from trusts." Of this latter amount, all but $5,823 was received from the John R. Oishei Appreciation Trust (a private foundation as defined by section 509) in the month of January 1973.

During 1973, petitioner made qualifying distributions within the meaning of section 4942(g) in the amount of $1,005,950, of which $410,075 was a distribution of income and $595,875 constituted a distribution of corpus.

At all relevant times, petitioner's directors and officers, other than its secretary, served without compensation for services rendered to the petitioner. Its directors determined which public charitable, educational, and scientific organizations were to receive distributions from the petitioner and the amounts thereof and made all ultimate investment decisions.

Petitioner paid the following expenses during 1973:

Salaries for part-time employees:
Ruth Steiger ....................................$7,070.00
Jane Keefe ...................................... 6,670.00
Richard L. Wolf .............................. 4,915.00
Audit fee, Price Waterhouse & Co ......... 5,000.00
Legal fee and disbursements ................ 5,516.51
Miscellaneous:
 Filing fee—New York State
  Department of Law .......................... 100.00
 New York secretary of state .................. 30.00
 Postage ............................................. 39.60
 Stationery ......................................... 52.43
 Publication of annual legal notice
  as required by sec. 6104(d) ..................... 5.80
               29,399.34

The amount paid to Price Waterhouse & Co. was for—

Examination of the financial statements for the year ended December 31, 1972 including revised financial statement presentation and research and assistance relating to various tax matters, including review of Forms 990–PF and 990–AR.

The amount paid for "Legal fee and disbursements" was for legal services in connection with a suit in a United States District Court and appeal to a United States Circuit Court of Appeals in the case of *Jackson v. Statler Foundation, Inc.,* and "various other Foundation matters." That suit purportedly was brought under sections 1981, 1983, and 1985 of title 42 U.S.C. and involved claims that petitioner and other defendants had discriminated against Negroes in the award of grants, in refusing to hire Negroes as employees or as directors, and in investing their assets in white businesses. Various forms of relief were sought, including injunctive relief, a declaratory judgment revoking tax-exempt status, and damages. The suit was ultimately dismissed.

The parties have stipulated that—

All the expenses [set forth], above, were ordinary and necessary expenses paid for the production or collection of gross investment income, or for the management, conservation or maintenance of property held for the production of such income, and in making distributions of income and corpus to qualified

public charitable, educational and scientific organizations. The reference to such distribution of income and corpus in the foregoing sentence shall not infer agreement as to whether the expenses of making such distributions are properly includable or excludable as expenses deductible within the meaning of Section 4940(c)(3)(A) of the Code.

## Section 4940(a) of subtitle D provides as follows:

SEC. 4940(a). TAX-EXEMPT FOUNDATIONS.—There is hereby imposed on each private foundation which is exempt from taxation under section 501(a) for the taxable year, with respect to the carrying on of its activities, a tax equal to 4 percent of the net investment income of such foundation for the taxable year.

## Section 4940(c) of subtitle D provides, in pertinent part, as follows:

SEC. 4940(c). NET INVESTMENT INCOME DEFINED.—

(1) IN GENERAL.—For purposes of subsection (a), the net investment income is the amount by which (A) the sum of the gross investment income and the capital gain net income exceeds (B) the deductions allowed by paragraph (3). Except to the extent inconsistent with the provisions of this section, net investment income shall be determined under the principles of subtitle A.

(2) GROSS INVESTMENT INCOME.—For purposes of paragraph (1), the term "gross investment income" means the gross amount of income from interest, dividends, rents, and royalties, but not including any such income to the extent included in computing the tax imposed by section 511.

(3) DEDUCTIONS.—

(A) IN GENERAL.—For purposes of paragraph (1), there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred for the production or collection of gross investment income or for the management, conservation, or maintenance of property held for the production of such income, determined with the modifications set forth in subparagraph (B).

(B) MODIFICATIONS.—For purposes of subparagraph (A)—

(i) The deduction provided by section 167 shall be allowed, but only on the basis of the straight line method of depreciation.

(ii) The deduction for depletion provided by section 611 shall be allowed, but such deduction shall be determined without regard to section 613 (relating to percentage depletion).

## Section 53.4940–1(e), Foundation Excise Tax Regs., provides, in pertinent part, as follows:

Sec. 53.4940–1(e). *Deductions*—(1) *In general.* (i) For purposes of computing net investment income, there shall be allowed as a deduction from gross investment income all the ordinary and necessary expenses paid or incurred for the production or collection of gross investment income or for the management, conservation, or maintenance of property held for the production of such income, determined with the modifications set forth in subparagraph (2) of this

paragraph. Such expenses include that portion of a private foundation's operating expenses which is paid or incurred for the production or collection of gross investment income. Taxes paid or incurred under this section are not paid or incurred for the production or collection of gross investment income. A private foundation's operating expenses include compensation of officers, other salaries and wages of employees, outside professional fees, interest, and rent and taxes upon property used in the foundation's operations. Where a private foundation's officers or employees engage in activities on behalf of the foundation for both investment purposes and for exempt purposes, compensation and salaries paid to such officers or employees must be allocated between the investment activities and the exempt activities. To the extent a private foundation's expenses are taken into account in computing the tax imposed by section 511, they shall not be deductible for purposes of computing the tax imposed by section 4940.

(ii) Where only a portion of property produces, or is held for the production of, income subject to the section 4940 excise tax, and the remainder of the property is used for exempt purposes, the deductions allowed by section 4940(c)(3) shall be apportioned between the exempt and nonexempt uses.

(iii) No amount is allowable as a deduction under this section to the extent it is paid or incurred for purposes other than those described in subdivision (i) of this subparagraph. Thus, for example, the deductions prescribed by the following sections are not allowable: (1) the charitable deduction prescribed under section 170 and 642(c); (2) the net operating loss deduction prescribed under section 172; and (3) the special deductions prescribed under Part VIII, subchapter B, chapter 1.

Petitioner deducted all of its expenses (totaling $29,399) in computing net investment income. In his deficiency notice, respondent allowed only $1,399 thereof on the ground that petitioner had not established that the disallowed portion had been paid or incurred for purposes permitted by section 4940(c)(3)(A). Although respondent has not specified how he arrived at this allocation of the claimed expenses, it is his contention that the disallowed portion was for nonpermissible purposes and that petitioner has not carried its burden of proof that a different allocation should be utilized.

Petitioner's position is founded on the following syllogism: (1) Section 4940 provides that, except where inconsistent with that section, net investment income shall be calculated under the principles of subtitle A; (2) subtitle A includes section 212; (3) the language of section 4940(c)(3)(A) tracks the language of section 212;[2] (4) under section 212 and the applicable regulations

---

[2]That section provides as follows:

SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.

(sec. 1.212–1(i), Income Tax Regs.), expenses incurred by a fiduciary in making distributions of property are deductible in accordance with the holding of *Trust of Bingham v. Commissioner*, 325 U.S. 365 (1945); (5) since it is stipulated that *all* of petitioner's expenses fall within the literal language of section 4940(c)(3)(A) or were incurred in making distributions to exempt organizations (see pp. 3–4 *supra*), their deductibility is mandated.

This is a case of first impression. The general rule of statutory construction is that words used in different parts of a statute should generally be accorded the same meaning. See *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 86–87 (1934); *Meyer v. United States*, 175 F.2d 45 (2d Cir. 1949). But the rule encompasses only a presumption and not an inexorable standard for decision; each statutory provision should be examined in light of the context, purpose, and situation involved. *Helvering v. British-American Tobacco Co.*, 69 F.2d 528, 530 (2d Cir. 1934), affd. 293 U.S. 95 (1934). See *Helvering v. Stockholms Enskilda Bank, supra; McComish v. Commissioner*, 64 T.C. 909, 919 (1975), on appeal (9th Cir., Feb. 12, 1976); *Whirlpool Corp. v. Commissioner*, 61 T.C. 182, 187 (1973). This admonition is particularly apt in the instant case, where, as will appear, we have the same language in three separate provisions—sections 212 (see n. 2 *supra*), 4940(c)(3)(A) (see p. 4 *supra*), and 4942(f)(3)(A)[3]– and it is established that at least two of the three provisions (sections 212 and 4942(f)(3)(A)) should be given different interpretations.

The excise tax on private foundations is part of a most complex and detailed set of statutory provisions contained in the Tax Reform Act of 1969, which were designed to regulate the abuses which Congress felt existed in the formation and operation of exempt organizations. H. Rept. 91–413 (Part 1) 4

---

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

    (1) for the production or collection of income;

    (2) for the management, conservation, or maintenance of property held for the production of income; or

    (3) in connection with the determination, collection, or refund of any tax.

[3] Sec. 4942(f)(3)(A) provides, in pertinent part, that—

no deduction shall be allowed other than all the ordinary and necessary expenses paid or incurred for the production or collection of gross income or for the management, conservation, or maintenance of property held for the production of such income and the allowances for depreciation and depletion determined under section 4940(c)(3)(B).

(1969), 1969–3 C.B. 200, 202; S. Rept. 91–552, p. 6 (1969), 1969–3 C.B. 423, 426. Both the House and the Senate considered the excise tax involved herein as a "user charge" or "audit fee" to defray the costs of governmental supervision. H. Rept. 91–413, *supra* at 19, 1969–3 C.B. at 213; S. Rept. 91–552, *supra* at 27–28, 1969–3 C.B. at 441–442.

Section 101(a) of H.R. 13270 (the Tax Reform Act of 1969), as passed by the House of Representatives on August 8, 1969 (hereinafter the House bill), in pertinent part tracked the language of section 4940(a) and (c) as finally passed. The report of the House Ways and Means Committee contained the following explanation:

> The bill imposes a tax of 7½ percent upon a private foundation's net investment income. The income subject to this tax includes interest, dividends, rents, and royalties, *less the expenses paid or incurred in earning such income.* The corporate dividends received deduction is not allowed *since it is not actually "expenses paid or incurred" in earning the income.* [H. Rept. 91–413, *supra* at 19–20, 1969–3 C.B. at 213. Emphasis added.]

The Senate adopted a different base for the excise tax, namely, the market value of certain assets of private foundations. See H.R. 13270 (the Tax Reform Act of 1969) as passed by the Senate on November 21, 1969 (hereinafter the Senate bill); S. Rept. 91–552, *supra* at 6, 27, 1969–3 C.B. at 426, 441–442.

The legislation, as finally enacted, adopted the approach proposed by the House. The only change which has a bearing on the instant case was the inclusion of the sentence, "Except to the extent inconsistent with the provisions of this section, net investment income shall be determined under the principles of subtitle A."[4] The conference committee report contains no explanation of section 4940 which is material to the instant case. See Conf. Rept. 91–782 (1969), 1969–3 C.B. 644.

Admittedly, the legislative history is sparse, but what little there is points in the direction of confining deductions to those

---

[4]We note that under the House bill the provision that imposed a tax on the investment income of private foundations was inserted as sec. 506 of the Code. The Senate changed the basis upon which the tax was imposed to evidence its great concern that the tax should not be considered a precursor of an income tax on foundations. S. Rept. 91–552, p. 27 (1969), 1969–3 C.B. 423, 442. In addition, it transferred this provision from subtitle A to subtitle D of the Code. Since the provision as enacted imposed the tax on income, it is a reasonable inference that this language reflects the assumption that the principles to be applied in calculating investment income should be those inherent in the original House bill (where the provision was included in subtitle A) except to the extent that an inconsistency is found to exist (see *Beal Foundation v. United States,* 559 F.2d 359 (5th Cir. 1977); *Windsor Foundation v. United States,*   F. Supp.   (E.D. Va. 1977)).

expenditures with respect to which there is a "nexus" with the production of income. See *Whitehead Foundation, Inc. v. United States*, F. Supp. (N.D. Ga. 1977). See also *Lykes v. United States*, 343 U.S. 118 (1952), which held that expenses for accounting, legal, and other services incurred in making gifts were not deductible under section 23(a)(2) of the Internal Revenue Code of 1939 (the predecessor of section 212) and in which the Supreme Court said that "Generally a gift is the antithesis of such production or collection [of income]" and further determined that such expenses were not "mere incidents of [the] 'management, conservation, or maintenance of property held for the production of income.'" See 343 U.S. at 123, 124. Cf. *United States v. Gilmore*, 372 U.S. 39 (1963).

Fortunately, there is further and stronger evidence of legislative intent. Section 4942, which imposes a tax on undistributed income of private foundations, is another element of the comprehensive treatment of such foundations enacted in the Tax Reform Act of 1969. It is designed to encourage current distributions of all net income, with a required minimum payout set at a fixed percentage of the foundation's noncharitable assets. H. Rept. 91–413, *supra* at 25, 1969–3 C.B. at 217. Proposed section 4942 (included in section 101(b) of the House bill) made no reference to administrative expenses.

The Senate accepted the approach of the House bill. However, it made certain amendments that are pertinent to the resolution of the issue herein. The report of the Senate Finance Committee states:

> The committee's amendments make it clear that the audit-fee tax * * * and the unrelated business income tax reduce the amount the foundation must pay out to meet the minimum distribution requirements, *and reasonable administrative expenses of operating the foundation constitute qualifying distributions.* [S. Rept. 91–552, *supra* at 35, 1969–3 C.B. at 447. Emphasis added.]

Section 4942(g), as enacted, explicitly includes administrative expenses as qualifying distributions.[5]

"Undistributed income," upon which the tax is based, is

---

[5]The pertinent statutory language reads as follows:

SEC. 4942(g). QUALIFYING DISTRIBUTIONS DEFINED.

(1) IN GENERAL.—For purposes of this section, the term "qualifying distributions" means—

(A) any amount ( *including administrative expenses* ) paid to accomplish one or more purposes described in section 170(c)(2)(B) * * * [Emphasis added.]

defined as the excess of "distributable amount" over "qualifying distributions." See sec. 4942(c). "Distributable amount" is defined as the higher of "the minimum investment return or the adjusted net income" reduced by the taxes imposed under subtitle A (income taxes) and section 4940. See sec. 4942(d). In defining "adjusted net income," subsection 4942(f)(3)(A) permits deductions in terms almost identical with those used in subsection 4940(c)(3). See n. 3 *supra*.

In light of the manner in which section 4942 is structured, it seems clear that administrative expenses were not intended to be allowed as deductions in computing adjusted net income for purposes of that section. To conclude otherwise would, in effect, permit a foundation to deduct administrative expenses twice—once as an expense under section 4942(f)(3)(A) and again as a qualifying distribution under section 4942(g)—so that a private foundation could accumulate income without being subject to tax on undistributed income in an amount equal to its administrative expenses.[6] Or, to put the matter another way, if Congress intended only a single deduction for administrative expenses, as we think it did, and if the tracking language of section 212 covers such expenses, then the specific reference contained in section 4942(g) would have been unnecessary.

Accordingly, we conclude that administrative expenses were clearly not intended to be covered by the language tracking section 212 contained in section 4942(f)(3)(A) and that this is persuasive evidence that such expenses (except to the extent that there is a demonstrated "nexus" with the earning of gross

---

[6]The result can be demonstrated as follows: Assume that a private foundation subject to the provisions of sec. 4942 had gross income of $20,000, investment expenses of $2,000, administrative expenses of $3,000, other qualifying distributions of $11,280, and tax imposed under sec. 4940 of $720, and the foundation's adjusted net income exceeds its minimum investment return. The foundation in fact pays out all but $3,000.

The sec. 4942 tax is imposed on undistributed income, calculated as follows:

(a) undistributed income equals distributable amount minus qualifying distribution;

(b) distributable amount equals gross income minus allowable deductions minus taxes imposed on the foundation under subtitle A and sec. 4940;

(c) qualifying distributions equals administrative expenses plus other qualifying distributions.

If administrative expenses are treated as qualifying distributions and are not included in the deductions allowed in calculating the distributable amount, then,

| | | |
|---|---|---|
| distributable amount | = | $17,280 |
| qualifying distributions | = | 14,280 |
| and undistributed income | = | 3,000 |

If administrative expenses are also treated as allowable deductions, distributable income is reduced by $3,000, with the result that there is no undistributed income, although in fact $3,000 has not been paid out.

investment income) should not be covered by the identical tracking language contained in section 4940(c)(3)(A). We have found nothing in our research nor have we discerned any persuasive reason why the same words should not be treated in a consistent fashion when they are used not only in the same act but in the same part of that act and in a similar context in respect of the legislative effort to deal with a specialized set of problems dealing with a specific category of taxpayers.

Nor does *Trust of Bingham v. Commissioner, supra,* provide sufficient mortar to fuse the bricks of petitioner's position. In light of our holding that section 4940 should be construed in a manner consistent with section 4942 rather than section 212 (see pp. 7–10 *supra*), *Trust of Bingham,* which involved the predecessor to section 212 in the 1939 Code, is inapposite. Moreover, that case dealt with a different situation, where there was an integral relationship between the various activities of the trustees—a point which the Supreme Court itself later pointed out. See *Lykes v. United States, supra* at 124, n. 10. See also *Alfred I. duPont Testamentary Trust v. Commissioner,* 514 F.2d 917, 921 (5th Cir. 1975); *Glasgow v. Commissioner,* 21 T.C. 211, 218–219 (1953). The same integral relationship does not necessarily exist between the income-producing and distribution activities of exempt organizations. It is common knowledge that, unlike living or testamentary trusts, charitable organizations often have separate committees or boards to handle their investments and their distribution or utilization functions.

We see no need to dwell upon petitioner's argument that subparagraphs (i) and (ii) of section 53.4940–1(e), Foundation Excise Tax Regs., can be interpreted in such a manner as to support its position.[7] We think that petitioner's suggestion is simply too strained and that a proper interpretation of

---

[7]Petitioner's argument is as follows:.

It is true that subparagraph (ii) of that regulation specifically deals with the foundation that holds property for the production of investment income and property which is directly used for exempt purposes; but this does not infer that subparagraph (i), referring to activities for exempt purposes, means the distribution of investment income and property held for the production of such income to charitable organizations. There, of course, is the other case of the private foundation which holds no property other than property held for the production of investment income. An example of this would be a private foundation whose officers or employees engaged in benefit performances for charity. The expenses of such performances would not be related to property held for the production of investment income and would properly be denied deduction under subparagraph (i) of the regulation [Fn. ref. omitted.]

subparagraph (i) clearly covers the situation herein. Our analysis indicates that the regulation cannot be said to be an arbitrary or unreasonable interpretation of the statute and therefore should be sustained. *Fulman v. United States,* 434 U.S. 528 (1978); *Bingler v. Johnson,* 394 U.S. 741 (1969); *Commissioner v. South Texas Lumber Co.,* 333 U.S. 496 (1948).

Adoption of petitioner's position may well have a small impact where private foundation activities are restricted simply to distributing funds to the exempt organizations. But the impact could be substantial in case of private "operating foundations," which are also subject to excise tax and whose activities in administering the disposition of their funds could be substantial and involve a broad range of types of expenditures. We reject petitioner's implied suggestion that there is a difference between two types of private foundations. There is simply no indication of such distinction in statute or legislative history as far as the excise tax is concerned.

We conclude that, contrary to petitioner's contention, all of its expenses are not deductible and that an allocation should be made. We do so with a sense of sadness, born of frustration, because, in so doing, we recognize that the necessity of allocation may well spawn increased litigation of a question which rarely, if ever, can be simply answered and that the consequence may well be to add to the burden of an already overworked judiciary. But, in good conscience, we cannot adopt a rule of overall deductibility.

Our difficulty with making an allocation herein stems from the fact that petitioner has taken an all-or-nothing approach. As a consequence, there is no evidence in the record which would permit us to make an allocation which would be more favorable to petitioner than the allocation made by respondent. Accordingly, we sustain the allocation in the deficiency notice on the ground that petitioner has not sustained its burden of proof (Rule 142, Tax Court Rules of Practice and Procedure) that a different allocation would be appropriate.

In opting for a requirement of allocation, we are also aware of the fact that judicial responsibility in respect of such an issue can at best be discharged in most situations only by hopefully intelligent guesswork. Having recognized that an allocation of some of the expenditures at issue herein should be made, Rev. Rul. 75–410, 1975–2 C.B. 446, perhaps respondent in his

inestimable wisdom will figure out some mathematical formula which will fairly and easily resolve most allocation problems. Cf. *Fabens v. Commissioner*, 519 F.2d 1310 (1st Cir. 1975); *Tyne v. Commissioner*, 409 F.2d 485 (7th Cir. 1969).

*Decision will be entered for the respondent.*

---

[1]All section references, unless otherwise indicated, are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue.