**JULIA R. & ESTELLE L. FOUNDATION INCORPORATED, Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**No. 519, Docket 78–4164.**

United States Court of Appeals, Second Circuit.

Argued Jan. 17, 1979.

Decided May 7, 1979.

---

Albert R. Mugel, Buffalo, N.Y. (Jaeckle, Fleischmann & Mugel, Buffalo, N.Y., of counsel), for appellant.

Michael J. Roach, Washington, D.C. (M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews and Gary R. Allen, Attys., Tax Div., Dept. of Justice, Washington, D.C., of counsel), for appellee.

Before OAKES, GURFEIN, and Van GRAAFEILAND, Circuit Judges.

Van GRAAFEILAND, Circuit Judge:

The issue in this case is whether a private foundation subject to the excise tax imposed by section 4940 of the Internal Revenue Code of 1954 (26 U.S.C. § 4940) must allocate its administrative expenses between its investment activities and its distribution activities and may deduct only the former in calculating its net investment income for excise tax purposes. Appellant, a private non-operating foundation, refused to make such an allocation for its 1973 return, and, as a result, almost all of its administrative expenses were disallowed by the Commissioner as not being proper deductions from net investment income. This determination was upheld by the Tax Court. 70 T.C. No. 1 (1978). Appellant's position here, as it was before the Tax Court, is that all of its administrative expenses were deductible and that allocation was therefore unnecessary.

The dispute between the parties is purely one of statutory interpretation. Section 4940 imposes a yearly excise tax (now two percent) on a private foundation's investment income. It defines net investment income as the sum of the gross investment income and capital gain net income less "all the ordinary and necessary expenses paid or incurred for the production or collection of gross investment income or for the management, conservation, or maintenance of property held for the production of such income . . . ." Relying upon the Supreme Court's interpretation of similar language in section 212 (26 U.S.C. § 212), appellant contends that its administrative expenses incurred in the distribution of income and corpus to qualified public charitable, educational, and scientific organizations were expenses incurred in connection with the "management" of its property and therefore properly deductible.[1] That this was the congressional intent, appellant argues, is indicated by the provision in section 4940(c)(1) that "[e]xcept to the extent inconsistent with the provisions of this sec-

---

[1]. In *Trust Under the Will of Bingham v. Commissioner,* 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670 (1945), the Court held that legal expenses incurred by trustees of a testamentary trust in making final distribution and contesting a related income tax deficiency assessment were deductible as expenses incurred in the management of the trust property.

tion, net investment income shall be determined under the principles of subtitle A." [2] Appellant contends also that the allocation of administrative expenses between income and disbursements would be impracticable and, in view of the small amount of tax involved, unreasonably expensive.

The Tax Court felt, however, that clearer evidence of congressional intent could be found in the language of section 4942 (26 U.S.C. § 4942), included with section 4940 in that portion of the Tax Reform Act of 1969 dealing specifically with private foundations. Section 4942 seeks to encourage the current distribution of foundation income by imposing a tax on undistributed income. Under this section, undistributed income is calculated by determining (1) the adjusted net income, i. e., the gross income less certain specified deductions, (2) deducting taxes from the adjusted net income to determine the distributable amount, and (3) deducting from the distributable amount the total of qualifying distributions. Among the specified deductions from gross income are "all the ordinary and necessary expenses paid or incurred for the production or collection of gross income or for the management, conservation, or maintenance of property held for the production of such income and the allowances for depreciation and depletion determined under section 4940(c)(3)(B) . . . ." 26 U.S.C. § 4942(f)(3)(A). Qualifying distributions are defined, on the other hand, as the amounts paid to accomplish certain specified charitable purposes "including administrative expenses". *Id.* § 4942(g)(1)(A). The Tax Judge concluded that if administrative expenses could be included among the specified deductions and also added to the qualifying distributions, foundations would be permitted to deduct them twice, a result that Congress certainly did not intend.

This result would be avoided if only those administrative expenses relating to the production of income were deductible and only those relating to the foundation's grant-making functions were included among the qualifying distributions.

The Tax Court also looked to Treasury Regulation 53.4940–1(e) (26 C.F.R. § 53.-4940–1(e)) which, after reciting the above-quoted deduction provisions of section 4940 provides:

> Such expenses include that portion of a private foundation's operating expenses which is paid or incurred for the production or collection of gross investment income. . . . Where a private foundation's officers or employees engage in activities on behalf of the foundation for both investment purposes and for exempt purposes, compensation and salaries paid to such officers or employees must be allocated between the investment activities and the exempt activities.

The Tax Court, recognizing that this regulation must be sustained unless unreasonable and plainly inconsistent with the statute, *see Fulman v. United States,* 434 U.S. 528, 533, 78 S.Ct. 841, 55 L.Ed.2d 1 (1978), interpreted the statute in the same manner. We believe that the Tax Court made the correct decision.[3]

Apportionment of expenses was not a novel undertaking imposed upon charitable organizations by the 1969 Act. Since 1950, certain tax-exempt organizations have been required to file annual reports showing their gross income for the year and the "expenses attributable to such income." *See* Revenue Act of 1950, ch. 994, § 341(a), 64 Stat. 960 (current version at 26 U.S.C. § 6033). The 1969 Act merely made this duty applicable to private foundations. *See* 26 U.S.C. § 6056.

2. Section 212 is part of subtitle A.

3. Although we do not accept revenue rulings as binding authorities, *see Miller v. Commissioner,* 327 F.2d 846, 850 (2d Cir.), *cert. denied,* 379 U.S. 816, 85 S.Ct. 32, 13 L.Ed.2d 28 (1964), we note with interest Rev.Rul. 75–410, Mertens, *Law of Federal Income Taxation, 1975 Rulings* 503–04. That ruling held, consistent with

Treas.Reg. 53.4940–1(e), that only that part of an annual audit fee attributable to the examination of investment income and expenses was deductible under § 4940 and that the fee therefore had to be apportioned between the foundation's investment activity and its exempt activity.

The language of section 6056 is illuminating. It requires, among other things, that a foundation set forth in its annual report (1) its gross income for the year, (2) its expenses attributable to such income, and (3) its disbursements, "including administrative expenses". Form 990–AR, on which appellant filed its 1973 annual report, required exactly this information. Under the heading "Disbursements and Expenses", appellant was required to report:

4. Disbursements for the year for the purposes for which exempt (including administrative expenses).

5. Expenses attributable to gross income . . . for the year.

In preparing this form, appellant included all of its administrative expenses in item 5, "expenses attributable to gross income", and none of them in item 4. Surely this was not what Congress intended should be done.

■ Section 4940 was intended to be an excise tax on investment income, a "charge on income." See H.R.Rep. No. 413, 91st Cong., 1st Sess., reprinted in [1969] U.S. Code Cong. & Ad.News, pp. 1645, 1648; S.Rep. No. 552, 91st Cong., 1st Sess., reprinted in id. pp. 2027, 2053–54; Conf.Rep. No. 782, 91st Cong., 1st Sess., reprinted in id. p. 2392; 115 Cong.Rec.H. 22565, 22571–72 (daily ed. Aug. 6, 1969) (remarks of Rep. Mills), reprinted in Internal Revenue Acts 1966–1970, Text of Acts and Legislative History 2081, 2099. As originally passed by the House, the bill contained the above-quoted definition of deductions we are now being asked to interpret. The Senate Committee on Finance held open hearings on the House bill and invited public comment. One criticism directed at the bill was that deductions from gross income were too restricted. As one critic put it:

We know of no reason why ordinary and necessary expenses should be limited to those of investment advice or property management only. We see no reason why all expenses of the foundation should not be allowed assuming that such expenses are reasonable and necessary to carrying out the exempt purpose of the private foundation and if such expenses are not excessive.

Tax Reform Act of 1969, Hearings on H.R. 13270 before the Committee on Finance, United States Senate, 91st Cong., 1st Sess. Pt. 6 at 6027–28; see id. Pt. 7 at 6281.

Criticism was also directed against the deduction provisions of section 4942, the argument being that grant-making expenses should be included in determining whether the payout requirements have been met. Id., Pt. 6 at 6172; id., Pt. 7 at 6208.

■ Following the Senate hearings, Congress amended proposed section 4942 by including administrative expenses as a qualifying distribution. However, it left unchanged in both sections the language covering deductions. It would appear from this that Congress did not intend in either section to make distribution or grant-making expenses a "charge on income". Indeed, in referring to section 4942, the Senate Report makes this quite clear:

Expenses of earning the income, including depreciation and depletion where appropriate, are deductible in computing the net income subject to this rule.

1969 U.S.Code Cong. & Ad.News at 2062.

■ In the light of the clear congressional intent to make the excise tax a charge on income and to allow only the expenses of earning the income as proper deductions, the Tax Court did not err in rejecting appellant's argument that Trust Under the Will of Bingham v. Commissioner, supra, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670, mandated a contrary interpretation. The deductibility of expenses depends upon the nature of the activities to which they relate. Lykes v. United States, 343 U.S. 118, 123, 72 S.Ct. 585, 96 L.Ed. 791 (1952). The origin and character of the claim giving rise to the expense is what controls, not the consequences of the claim's payment. United States v. Gilmore, 372 U.S. 39, 48, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963). Thus, it is one thing to hold, as the Court did in Bingham, that the trustees of a non-exempt trust may deduct all the ordinary and necessary expenses of administer-

ing the trust for the purposes of determining its taxable income for income tax purposes. It is quite another to hold that grant-making expenses of a private foundation are appropriate deductions when calculating the amount of an excise tax on its investment income.

Because appellant adopted an all-or-nothing approach by charging all of its administrative expenses against gross income and has made no request that it be permitted to allocate, the Commissioner's disallowances were correctly sustained. *See Rodman v. Commissioner,* 542 F.2d 845, 852–54 (2d Cir. 1976).

Affirmed.