**LETTIE PATE WHITEHEAD FOUNDATION, INC., Plaintiff-Appellee, Cross-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellant, Cross-Appellee.**

**No. 77–1853.**

United States Court of Appeals, Fifth Circuit.

Nov. 13, 1979.

---

Gilbert E. Andrews, Act. Chief, App. Section, M. Carr Ferguson, Asst. Atty. Gen., Tax Div., Ann Belanger Durney, Atty., F. Arnold Heller, Atty., Ernest J. Brown, Atty., U. S. Dept. of Justice, Washington, D. C., for defendant-appellant, cross-appellee.

John A. Wallace, Michael C. Russ, Ralph B. Levy, L. Joseph Loveland, Atlanta, Ga., for plaintiff-appellee, cross-appellant.

Before SIMPSON, TJOFLAT and HILL, Circuit Judges.

SIMPSON, Circuit Judge:

Following the entry of partial summary judgment for the Lettie Pate Whitehead Foundation, Inc. (Taxpayer or the foundation) on stipulated facts by the district

court in this suit for refund of excise taxes, the United States appealed and Taxpayer cross-appealed.[1] We reverse on the government's appeal and affirm as to Taxpayer's cross-appeal.

The first issue presented is whether a private foundation, as defined by section 509 of the Internal Revenue Code of 1954, which is also the sole remainder beneficiary of a trust, is entitled to deduct the trustee's termination fee when computing the foundation's excise tax on net investment income. I.R.C. § 4940. The second issue is whether a private foundation may use the Code section 642(h)(2) unused deductions of the trust in computing the excise tax. A private foundation is not entitled to either deduction under the facts of this case.

The stipulated facts follow. Taxpayer is a charitable organization exempt from federal income tax. I.R.C. §§ 501(a), (c)(3). However, because the foundation is a private foundation, as defined by section 509, it is subject to an excise tax on its net investment income.[2] The controversy in this dispute concerns the allowable deductions in computing the section 4940 excise tax.

The foundation was established by the will of the late Conkey P. Whitehead. Mr. Whitehead's will also established a trust; his widow was entitled to the income of the trust during her life and upon her death the foundation was entitled to receive the remainder. The widow's death in April of 1970 spawned the series of events underlying this litigation.

Under Georgia law, a trustee is allowed a distribution fee of up to 3 percent of the value of assets distributed. Ga.Code Ann. §§ 49–223, 108–432, 113–2004. The Georgia Court of Ordinary may set a fee of less than 3 percent, but, to avoid court intervention, Georgia trustees frequently negotiate an agreeable fee. Id. Accordingly, after a period of arms' length negotiations, the corporate trustee and the foundation agreed to a final distribution fee of $300,000, approximately 1.79 percent of the value of the trust assets at the time of the income beneficiary's death.

Most of the trust assets were minority shares of stock in two closely held corporations. Satisfaction of the $300,000 fee directly from trust assets would have required a partial liquidation at less than actual value because there was little, if any, market for the closely held stock. The foundation paid the fee directly in order to avoid a possible disadvantageous partial liquidation. Thereafter all trust assets were distributed to the foundation.

The trust claimed and was allowed by the Commissioner a $307,982 deduction for trustee's fees in its 1970 tax year, $7,982 in cash receipts and disbursements fees and the $300,000 final distribution fee. See I.R.C. §§ 212, 641, 642. The trust's taxable income for the 1970 tax year was less than its deductions and, consequently, $228,659.75 of the deductions were not used by the trust. Generally remainder beneficiaries of a trust are allowed to claim the unused deductions of such a terminated trust in computing their federal income tax. Id. at § 642(h)(2). In this case the foundation claimed the entire $300,000 as a section 4940(c)(3)(A) deduction in computing its section 4940 excise tax for the 1970 tax year. The foundation alternatively claimed that it was entitled to claim the $228,659.75 in unused deductions of the trust as a foundation deduction in computing the excise tax. The Commissioner disallowed the deduction of the entire $300,000 fee and further determined that the foundation was not entitled to deduct the unused deductions of the trust. The foundation paid the deficiency subsequently assessed by the Commissioner, id. at § 6211, filed a timely claim for refund, id. at § 6511(a), and, after the statutory six month period, sued for refund in the district court. Treas.Reg. 301 § 6532–I(a)(1) (1956).

The district court ruled that the foundation was not entitled to deduct the entire

---

1. The district court opinion is unofficially reported at 77–1 U.S.T.C. ¶ 9157 (N.D.Ga.1977), and also at 39 A.F.T.R.2d 93.

2. I.R.C. § 4940. During the tax year in question the tax was 4 percent of net investment income. The Revenue Act of 1978 reduced the tax to 2 percent for tax years beginning after September 30, 1977.

$300,000 directly under section 4940(c)(3)(A) but that the foundation was entitled to deduct the $228,659.75 in unused deductions of the terminated trust. This appeal and cross-appeal followed.

■ The excise tax on the net investment income of private foundations was adopted by the Tax Reform Act of 1969. The Congress was concerned that many private foundations were not fulfilling the charitable purposes for which they were granted exemption from income tax. To combat this abuse, Congress added several provisions to the Internal Revenue Code of 1954 imposing excise taxes on certain practices inconsistent with the charitable purposes of private foundations. *See* I.R.C. §§ 4941 (tax on self dealing), 4942 (tax on undistributed income), 4943 (tax on excess business holdings), 4944 (tax on speculative investments), 4945 (tax on certain expenditures). The § 4940 excise tax was added to put the expense of auditing and enforcing these provisions on the private foundations. S.Rep.No.552, 91st Cong., 1st Sess. 6 *reprinted in* [1969] U.S.Code Cong. & Admin. News, pp. 2027, 2032. Technically the tax is an excise and not an income tax because it is imposed on a foundation's investment activities. *Id.* U.S.Code Cong. & Admin. News at 2053–54; 4 J. Rabkin and M. Johnson, *Federal Income, Gift and Estate Taxation,* § 59.01C(11) (1977).

The foundation's straightforward argument on appeal is that it paid the $300,000 and that therefore it is entitled to deduct that amount directly under section 4940(c)(3) in computing net investment income. The Code defines net investment income as: "the amount by which (A) the sum of the gross investment income and the capital gain net income exceeds (B) the deductions allowed by paragraph (3). Except to the extent inconsistent with the

provisions of this section, net investment income shall be determined under the principles of subtitle A." I.R.C. § 4940(c)(1). Gross investment income is defined as: "the gross amount of income from interest, dividends, rents, and royalties . . .." *Id.* at § 4940(c)(2). In computing net investment income a foundation is allowed deductions for "all the ordinary and necessary expenses paid or incurred for the production or collection of gross investment income or for the management, conservation, or maintenance of property held for the production of such income." *Id.* at § 4940(c)(3)(A). The foundation's argument is faulty on two independent grounds.

■ The trustee fee was clearly not "paid or incurred for the production or collection of gross investment income", *id.,* of the foundation because it was a distribution expense of the trust having nothing to do with production or collection of any specific item of income of the foundation. The only other allowable deduction pertinent to these facts is for expenses paid or incurred for the "management, conservation, or maintenance of property held for the production of such income . . .." *Id.* The Supreme Court has held that the payment of similar fees is deductible to a trust as an ordinary and necessary expense paid for the conservation of income producing property.[3] Likewise, in this case the trustee fee was an obligation and deduction of the trust and not of the foundation.

■ A trust is a juridical entity separate from its beneficiaries. *Anderson v. Wilson,* 289 U.S. 20, 27, 53 S.Ct. 417, 77 L.Ed. 1004 (1933); *United States v. Norton,* 250 F.2d 902, 905 (5th Cir. 1958). Consequently, the trustee distribution fees are obligations and deductions of the trust, not of its beneficiaries, even if the term of the trust has ended and even if the fees are paid by the beneficiary. *Estate of Drew,* 30

---

**3.** *Bingham's Trust v. Commissioner,* 325 U.S. 365, 373–376, 65 S.Ct. 1232, 89 L.Ed. 1670 (1945). We recognize that *Bingham* was decided under section 23(a)(2) of the Internal Revenue Code of 1939, the predecessor to section 212 of the present Revenue Code. However, these code provisions, as well as Code section 162, use language comparable to that found in section 4940(c). Therefore decisions interpreting these provisions are helpful in determining the meaning of identical or similar language in § 4940(c). *Cf. Bingham,* supra, 325 U.S. at 373, 65 S.Ct. 1232 (section 23(a)(2), the predecessor to section 212, described as being *in pari materia* with section 23(a)(1), the predecessor to section 162).

T.C. 335, 338 (1958); *Agnew v. Commissioner,* 16 T.C. 1466, 1468 (1951). The Supreme Court held in *Bingham* that:

> The property did not cease to be held for the production of income [by the trust] because, upon the expiration of the trust and until distribution, the trustees were under an additional duty to distribute the trust fund, or because the trustees, upon distribution, were then accountable to new and different beneficiaries, the residuary legatees, both for the principal of the fund and any income accumulating after the expiry date.

325 U.S. at 373, 65 S.Ct. at 1236. It logically follows that the property could not have been "held" for production of income by the foundation at the same time that it was being "held" for the production of income by the trust. The trust and not the foundation was entitled to deduct the payment of the fee.

The foundation argues that it should be allowed to deduct the $300,000 fee directly under section 4940 even if it was an obligation of the trust. In support of this argument the foundation points to a line of Tax Court cases which allowed deductions under §§ 162, 212 or their predecessors,[4] for expenses paid by a taxpayer, even though the expense was the obligation of a third party. *James L. Lohrke,* 48 T.C. 679 (1967); *Cubbedge Snow,* 31 T.C. 585 (1958); *Charles J. Dinardo,* 22 T.C. 430 (1954); *Edward J. Miller,* 37 B.T.A. 830 (1938); *Hennepin Holding Co.,* 23 B.T.A. 119 (1931). These cases are clearly distinguishable because in each there was a direct nexus between the purpose of the payment and the taxpayer's business or income producing activities that is absent in the instant fact situation.[5]

The foundation cites another line of cases which have permitted deductions for a remainder beneficiary's payment of property taxes accrued and chargeable to a trust. *Hord v. Commissioner,* 95 F.2d 179 (6th Cir. 1938); *Estate of Movius,* 22 T.C. 391 (1954); *Martin T. O'Brien,* 47 B.T.A. 561 (1942); *John E. Morrell,* 43 B.T.A. 651 (1941). These cases are also not persuasive to the foundation's argument for direct deduction under section 4940. First, these cases dealt with section 23(c) of the Internal Revenue Code of 1939 or its predecessors, which allowed deductions for payment of certain taxes. The relevance of such a provision to the excise tax provision, section 4940, is tangential at best. Second, the courts in three of these cases, *O'Brien, Morrell* and *Hord,* carefully noted that under the applicable state laws the beneficiaries were secondarily liable for the payment of the taxes. Liability for payment of the $300,000 trustee fee in the instant case lay solely with the trust. Finally, any support which these cases might have lent the foundation's position is dispelled by the subsequent decision of the Tax Court in *Estate of Drew, supra,* 30 T.C. at 338. In *Drew* the principal and income beneficiary of a trust sought to deduct her payment of the trustee's fee after termination of the trust. The tax court held that the beneficiary was not entitled to deduct the trustee fees and that *Hord, Movius, Morrell* and *O'Brien* were not pertinent to that situation because:

> In each of them the beneficiary was allowed a deduction for taxes assessed against the trust property on the ground that had such taxes not been paid the trust property would have been lost or the beneficial interest impaired. In the instant case the payment involved was for commissions earned by the trustee. Had the commissions never been paid by

---

4. See the discussion in Note 3, *supra.*

5. For example in *Dinardo* a medical partnership was allowed a deduction for expenses paid on behalf of a hospital organized by the partnership as a separate corporation to serve the partnership's patients; in *Miller* an independent insurance agent was allowed deductions for payment of claims made by his clients against a bankrupt insurance company whose policies the taxpayer had sold; and in *Henne-*

*pin* a realty holding company and a realty operating company were allowed to deduct payments made to advertise the business of their lessee. In each of the cases cited by the foundation the taxpayer was making the payment in order to conserve or maintain an existing source of income. See generally I.R.C. §§ 162, 212, 4940. In this case the foundation paid the trustee fees in order to acquire a future source of income.

Mary, she still would have received all of the trust property to which she was entitled, i. e., the property remaining after payment of the termination fee out of trust corpus. As we see it, the payment made by Mary was for services rendered the trust which properly should have been satisfied out of corpus before distribution.

*Drew, supra,* 30 T.C. at 338. The logic of the quoted portion of *Drew* is sound, and the facts are similar to the facts of the instant case on all relevant points. We find it persuasive. *See also United States v. Norton, supra,* 95 F.2d at 906–07.

■ Furthermore it is evident that the foundation did not, in reality, "pay or incur" the expense of the trustee fee. As the remainder beneficiary the foundation was only entitled to the trust assets not necessary to payment of the trustee fee. *Drew, supra.* By paying the trustee fee, the foundation, like the beneficiary in *Drew,* acquired something to which it was otherwise not entitled, the trust assets which would have been sold to satisfy the debt owed by the trust to the trustee. In effect the foundation purchased at least $300,000 worth of trust assets by paying the fee; the trust applied the $300,000 payment against the debt owed by the trust to the trustee. A purchase type transaction like this cannot create a deduction. The expense incurred by the foundation was an expense of acquiring a capital asset which is a capital expenditure not a deduction. See for example, *Cagle v. Commissioner,* 539 F.2d 409, 416 (5th Cir. 1976) and authorities cited therein.

■ The district court held that although the foundation was not entitled to deduct the entire $300,000 payment directly under section 4940(c)(3)(A), the foundation was entitled to claim, as a deduction in computing net investment income, the unused deductions of the trust. We disagree. Section 4940 provides that "[e]xcept to the extent inconsistent with the provisions of this section, net investment income shall be determined under the principles of subtitle A". I.R.C. § 4940(c)(1). Subtitle A contains the income tax provisions as well as section 642(h)(2), the provision which allows a beneficiary to deduct the unused deductions of a trust under certain circumstances.[6] The foundation argues that the above quoted section of 4940 incorporates section 642(h)(2) into section 4940. However, section 4940 allows deductions only for "all the ordinary and necessary expenses paid or incurred for the production or collection of gross investment income or for the management, conservation, or maintenance of property for the production of such income . . . ."[7] Section 642(h)(2) is inconsistent with the section 4940 definition of allowable deductions. We have pointed out the trustee fee has no nexus with the foundation's investment income activities. Section 642(h) does not alter that legal conclusion.

■ Deductions are matters of legislative grace and must be narrowly construed. *McGinley Corp. v. Commissioner,* 82 F.2d 56 (5th Cir. 1936). Moreover, the permissible deductions are strictly controlled by the code and equity cannot create a deduction not granted by the code. *E. g., Commissioner v. Kowalski,* 434 U.S. 77, 95–96, 98 S.Ct. 315, 54 L.Ed.2d 252 (1977); *C. A. White Trucking Co., Inc. v. Commissioner,* 601 F.2d 867, 869 (5th Cir. 1979). The taxpayer bears the burden of proving entitlement to a particular deduction. *E. g., Cagle v. Commissioner, supra,* 539 F.2d at 416; *C. A. White Trucking Co., supra,* 601 F.2d at 869. Applying these rules to the instant facts we find that the foundation has not met this burden.

---

6. Section 642(h) provides that:

If on the termination of an estate or trust, the estate or trust has . . .

    (2) for the last taxable year of the estate or trust deductions (other than the deductions allowed under subsections (b) or (c)) in excess of gross income for such year,

then such carryover or such excess shall be allowed as a deduction, in accordance with regulations prescribed by the Secretary or his delegate, to the beneficiaries succeeding to the property of the estate or trust.

7. I.R.C. § 4940(c)(3)(A). Section 4940 also allows a depreciation, a depletion, and a capital loss deduction. Id. at § 4940(c). None of these deductions is relevant to the instant discussion.

The district court found: that the legislative history of section 4940 indicates a Congressional intent that the excise tax only cover the costs of auditing private foundations; that the tax was not intended to be an income producer; that section 4940 was not intended to impose harsher tax consequences on private foundations than on ordinary taxpaying entities; and that if the foundation had been an ordinary income taxpayer it would have been entitled to deduct the section 642(h)(2) unused deductions of the trust in computing its income tax. App. at 63–65; 77–1 U.S.T.C. at ¶ 9157. Therefore, the district court erroneously concluded, it would be inconsistent with the legislative intent of section 4940 not to allow the deduction to the foundation.

The applicable legislative history does indicate that section 4940 was not intended as a revenue producer and that Congress did not intend to impose harsher consequences on private foundations. H.R.Rep.No.413, 91st Cong., 1st Sess., *reprinted* in [1969] U.S.Code Cong. & Admin.News, pp. 1645, 1648; S.Rep.No.552, 91st Cong., 1st Sess. *reprinted* in [1969] U.S.Code Cong. & Admin.News, pp. 2027, 2053–54. But this result was accomplished by the low rate of the excise tax.[8] The narrow scope of the allowable section 4940 deductions was criticized at the open hearings on the house bill. Tax Reform Act of 1969, Hearings on H.R. 13270 before the Committee on Finance, United States Senate 91st Cong., 1st Sess. Pt. 6 at 6027–28, *discussed in Julia R. & Estelle L. Foundation, Inc. v. Commissioner,* 598 F.2d 755, 758 (2d Cir. 1979). However,

the deduction provision was enacted without change. The legislative history evidences a clear intent to tax net investment income and to allow only the expenses paid or accrued in earning net investment income as deductions. *Julia R. & Estelle L. Foundation, supra,* 598 F.2d at 758.

A section 642(h)(2) deduction does not fit within the statutory framework of section 4940.[9] The foundation is not entitled to the refund it seeks.

AFFIRMED in part and REVERSED in part.

---

**8.** *See generally* note 2 *supra.*

**9.** In Rev.Rul. 76–248, 1976–1 C.B. 353, the Internal Revenue Service permitted a section 171 amortizable bond premium deduction in computing the section 4940 tax. The foundation argues that the ruling indicates that the scope of section 4940 deductions is broader than the plain language of the statute and comparable holdings under section 212 would indicate. The government argues that deduction of amortizable bond premiums is consistent with the deductions defined in section 4940(c). A bond premium is the amount by which the purchase price exceeds the bond's face value. Bonds

which sell at a premium generally bear a higher interest rate than similar securities. Therefore the premium can properly be characterized as the amount paid for the right to receive a higher interest rate. *Hanover Bank v. Commissioner,* 369 U.S. 672, 677, 82 S.Ct. 1080, 8 L.Ed.2d 187 (1962). Accordingly, the government argues, the section 171 deduction is consistent with section 4940 because such bond premiums may be viewed as directly related to the production of income, specifically, the interest on the bond. We decline to rule on the correctness of the revenue ruling because it is not necessary to decision of this case.