INDIANA UNIVERSITY RETIREMENT COMMUNITY, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2493-88.        Filed May 8, 1989.

*William W. Oliver,* for the petitioner.
*Elsie Hall,* for the respondent.

OPINION

WILLIAMS, *Judge:* The Commissioner determined deficiencies in petitioner's excise tax pursuant to section 4940[1] for

[1]All section references are to the Internal Revenue Code of 1954 as in effect for the years in issue, unless otherwise indicated.

1982 and 1983 in the amounts of $22,446 and $4,834, respectively. The issue we must decide is whether petitioner may deduct certain interest expense from its "gross investment income" as defined in section 4940 to compute "net investment income."

All of the facts in this case have been stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure, and are so found. Petitioner is an Indiana not-for-profit corporation, incorporated in 1977. Petitioner was an exempt, private foundation as defined in section 509 for taxable years 1982 and 1983. At the time the petition was filed in this case petitioner's principal office was located in Bloomington, Indiana.

The tax exempt purpose of petitioner is to build and operate a retirement community. The completed facilities include a 4-section continuous apartment building with 92 dwelling units, 17 garden apartment clusters comprising an additional 92 dwelling units, 14 assisted living units and a 25-bed skilled nursing center. Construction on a number of the cluster apartments was completed in 1982 and operations of the facility began on a limited basis in that year. To build the retirement community facilities, the city of Bloomington, Indiana, issued Economic Development First Mortgage Bonds (bonds) in the total amount of $16,000,000 as follows:

| | |
|---|---|
| Series A at 12% interest | $10,000,000 |
| Series B at 12.5% interest | 6,000,000 |
| Total | 16,000,000 |

Petitioner paid interest in the amount of $1,348,447 and $1,634,530 in 1982 and 1983, respectively, on the debt underlying these bonds.

Petitioner invested the funds raised by the bond issue and earned dividends and interest totaling $1,125,278 in 1982 and $226,505 in 1983. In addition, petitioner earned capital gains of $18,200 in 1983.

The prospectus for the bond issue states:

Proceeds from the Series A Bonds and the Series B Bonds (proposed to be issued in a principal amount of $6,000,000), together with approximately $8,749,000 of anticipated Residency Fees and interest earned on funds invested during the Construction Period, will be used (i) to pay the

costs of developing, constructing and equipping the Project, (ii) to fund interest on the Series A Bonds and the Series B Bonds during construction, (iii) to establish a Debt Service Reserve Fund, (iv) to establish a Residency Fees Reserve Fund, (v) to pay costs of issuance of the Series A Bonds and the Series B Bonds, (vi) to pay the Underwriter's discount and (vii) to provide operating reserves.  * * *

Moreover, failure to pay any due and payable installment of interest on the loans is an "event of default," and if a default occurred, the trustee under the bond indenture could require immediate payment of the entire loan principal and interest. In 1982 all of the invested funds came from the proceeds of the bond issue. In 1983 it is estimated that at least 95 percent of the funds invested came from the proceeds of the bond issues. The remaining 5 percent invested came from entrance and membership fees from the retirement community.

Petitioner charges entrance fees and membership fees as a condition of residency in the retirement facility. The entrance fees are refundable up to the date of admission. Thereafter, they are refundable at rates dependent upon the reasons for the termination of the residency and the length of the occupancy. Membership fees are normally refundable only in the event of death and are applied to the entrance fee at the time of residency. As of December 31, 1982, substantially all deferred entrance fees and membership fees were contractually refundable. Entrance fees and membership fees are deferred as income until admission at which time such fees are recognized as income over 13 years.

The cost of residency depends upon the type of unit which is purchased. As of January 1982, the various apartment units and garden units ranged in price from $22,000 through $83,675. In addition to the entrance fees and membership fees, the residents paid a monthly service fee.

For the taxable year ended December 31, 1982, petitioner reported that it had no net investment income on line 25(b) of the Form 990-PF, Return of Private Foundation, which it filed for that year and which showed the computation of net investment income as follows:

| | |
|---|---|
| Dividends and interest from securities ............ | $1,125,278 |
| Less: | |
|     Interest .................................... | 1,348,447 |
|     Other expenses ............................ | 21,891 |
| Total expenses ................................ | 1,370,338 |
| Net investment income (not less than -0-).......... | -0- |

Petitioner's interest expense was incurred on the debt underlying the city of Bloomington, Indiana, Economic Development First Mortgage Bonds. Other expenses in the amount of $21,891 comprised bank charges of $7,287 and amortization of debt issuance cost in the amount of $14,604.

For the taxable year ended December 31, 1983, petitioner reported that it had no net investment income and showed the computation of net investment income as follows:

| | |
|---|---|
| Dividends and interest from securities ............ | $226,505 |
| Capital gain net income ......................... | 18,200 |
| Total revenue.................................. | 244,705 |
| Less: | |
|     Interest .................................... | 1,634,530 |
|     Other expenses ............................ | 112,600 |
| Total expenses ................................ | 1,747,130 |
| Net investment income (not less than -0-).......... | -0- |

Petitioner's interest expense was incurred on the debt underlying the bonds. The other expenses claimed for 1983 comprised bank charges totaling $9,436 and amortization of debt issuance cost in the amount of $103,164.

Respondent disallowed the deduction of interest expense from petitioner's gross investment income and thus determined deficiencies in petitioner's 1982 and 1983 excise tax. The issue we must decide is whether the interest paid in 1982 and 1983 by petitioner in the amounts of $1,348,447 and $1,634,530, respectively, is deductible in determining "net investment income" pursuant to section 4940(c).

Section 4940(a) imposes a 2-percent excise tax on the annual "net investment income" of a tax-exempt private foundation as defined in section 501(a). Section 4940(c)(1) defines "net investment income" as follows:

(1) In General.—For purposes of subsection (a), the net investment income is the amount by which (A) the sum of the gross investment income and the capital gain net income exceeds (B) the deductions allowed by paragraph (3). Except to the extent inconsistent with the

provisions of this section, net investment income shall be determined under the principles of subtitle A.

For purposes of determining net investment income, "gross investment income" means "the gross amount of income from interest, dividends, rents, payments with respect to securities loans (as defined in section 512(a)(5)), and royalties * * * ." Sec. 4940(c)(2). In computing net investment income, allowable deductions are "all the ordinary and necessary expenses paid or incurred for the production or collection of gross investment income or for the management, conservation, or maintenance of property held for the production of such income." Sec. 4940(c)(3)(A). In interpreting the statutory provision for allowable deductions, section 53.4940-1(e)(1), Foundation Excise Tax Regs., provides in pertinent part:

> *Deductions*—(1) *In general.* (i) For purposes of computing net investment income, there shall be allowed as a deduction from gross investment income all the ordinary and necessary expenses paid or incurred for the production or collection of gross investment income or for the management, conservation, or maintenance of property held for the production of such income, * * *

Petitioner contends that the interest it paid on the Series A and Series B bonds in 1982 and 1983 in the amounts of $1,348,447 and $1,634,530, respectively, is deductible as an ordinary and necessary expense within the meaning of section 4940(c)(3)(A). Respondent argues that the interest paid on the bonds is not deductible because it is not an expense paid or incurred for the production or collection of gross investment income or for the management, conservation, or maintenance of property held for the production of such income. The basis for respondent's argument is that petitioner's liability on the debt underlying the bonds giving rise to interest expense was incurred to provide petitioner with capital to carry out its tax exempt purpose, i.e., construction of a retirement community, and not to produce investment income.

The interest expense paid on the debt underlying the bonds was incurred solely by petitioner and was not the expense of any other entity. Nevertheless, to be deductible from gross investment income pursuant to section 4940(c)(3)(A), the foundation's expenses must have a

"nexus" with the earning of gross investment income. *Julia R. & Estelle L. Foundation v. Commissioner,* 70 T.C. 1 (1978), affd. 598 F.2d 755 (2d Cir. 1979); *Lettie Pate Whitehead Foundation, Inc. v. United States,* 606 F.2d 534, 539 (5th Cir. 1979). In *Julia R. & Estelle L. Foundation v. Commissioner,* we held that a private foundation could not deduct administrative expenses attributable to its making distributions to public charitable, educational, and scientific organizations. We found that an "integral relationship" did not exist between the income-producing activities of the taxpayer and its distribution activities. *Julia R. & Estelle L. Foundation v. Commissioner, supra* at 10.

In this case, the central fact is that petitioner would have had no investment income in 1982 and less than 5 percent of its investment income in 1983 except for its return on investment of the bond proceeds. Petitioner generated gross investment income by investing the bond proceeds, and, as the bond prospectus states, petitioner's intent to invest temporarily the bond proceeds was explicitly for the purpose of obtaining investment income which would be used in the project. Further, petitioner would have had no funds to invest but for the issuance of the bonds. In the absence of the interest payments, the debt underlying the bonds would have been in default, and petitioner could have lost the use of the bond proceeds. Consequently, the interest expense on the bonds and the gross investment income from petitioner's investment of the bond proceeds arose out of the same transaction and were inextricably connected. Because of this direct nexus and integral relationship, we hold that petitioner's interest expense is an ordinary and necessary expense paid or incurred for the production or collection of gross investment income.

Respondent relies on *United States v. Gilmore,* 372 U.S. 39 (1963), for the proposition that the "origin and character" of petitioner's claimed deduction controls and that petitioner's interest expense was incurred to foster its exempt activities, not to generate investment income. In *Gilmore,* a defendant in a divorce proceeding could not deduct his attorney's fees as an ordinary and necessary expense of conserving income producing property pursuant to section 23(a) of the Internal Revenue Code of 1939 (the

predecessor section of section 212).[2] The Supreme Court held that the litigation costs were a nondeductible personal expense rather than a deductible investment expense pursuant to section 23(a) notwithstanding that the divorce proceeding put at risk the taxpayer's title to certain valuable stock and potential future income. The Supreme Court ruled that the origin and character of a claim with respect to which an expense was incurred (i.e., divorce in *Gilmore*), rather than its potential consequences upon the future of the taxpayer (i.e., his title to income producing property), was the "controlling test" in deciding if an expense was an ordinary and necessary expense paid for the management, conservation, or maintenance of property held for the production of income.

Respondent has misapplied the *Gilmore* test to this case. In *Gilmore* the inherently personal characteristics of a divorce proceeding dominated the nature of the litigation costs incurred by the taxpayer. Preservation of the taxpayer's income producing property was subsumed in the personal nature of the divorce proceeding. The costs arose from the taxpayer's personal divorce action, and his profit seeking activities were irrelevant to those costs. In the case before us, by contrast, petitioner's interest expense was incurred to generate the funds which were invested, and the investment of those funds was essential to petitioner's financial capacity to meet its debt obligation underlying the bonds. Indeed, part of the stated purpose for borrowing the funds was their temporary investment. The prospectus states that the investment income generated from temporary investment of the bond proceeds would be used to satisfy, in part, petitioner's obligations on the debt underlying the bonds. Petitioner would have defaulted on the debt which generated the proceeds if petitioner had not invested the proceeds for a temporary period to obtain the anticipated investment income. To be sure, petitioner's purpose in incurring the debt was primarily to construct the retirement facilities, but it was also petitioner's purpose to invest the

[2]As discussed in *Julia R. & Estelle L. Foundation v. Commissioner,* 70 T.C. 1 (1978), affd. 598 F.2d 755 (2d Cir. 1979), sec. 212 and its predecessor sec. 23(a) are relevant to our decision in this case because sec. 4940(c) states that except where inconsistent the principles of subtitle A apply in determining net investment income. Sec. 212 uses language similar to the language used in sec. 4940(c) in describing deductible expenses.

borrowed funds to generate investment income. Consequently, the "origin and character" of the deduction for interest paid for use of the bond proceeds included the "production * * * of gross investment income" to the extent of the income from investment of those bond proceeds.

Respondent argues that Rev. Rul. 74-579, 1974-2 C.B. 383, is controlling in this case. Revenue rulings are statements of respondent's position for litigation and in themselves are not precedential in this Court. *Stubbs, Overbeck & Associates, Inc. v. United States,* 445 F.2d 1142, 1146-1147 (5th Cir. 1971). Reviewing the reasoning of Rev. Rul. 74-579, we conclude that respondent's position in this case is not well-founded. The facts of Rev. Rul. 74-579 are that a tax exempt private foundation obtained a loan from a commercial lending institution to make an interest free loan to a tax exempt university. The foundation paid the interest on the loan and forgave a portion of the debt as a contribution to the university. Because the debt giving rise to the interest liability of the foundation was incurred to acquire funds which were transferred to the university for its charitable use, respondent held that the interest expense could not be deducted from the taxpayer's gross investment income. The interest was not an ordinary and necessary expense of the type contemplated by section 4940(c)(3)(A), but rather was more closely associated with the taxpayer's charitable purpose. *Julia R. & Estelle L. Foundation v. Commissioner,* 70 T.C. at 10.

In Rev. Rul. 74-579, the foundation derived no gross investment income from the use of the funds loaned to the university. The missing link between the deduction for the interest expense and the gross investment income in the ruling is that the proceeds of the loan were not the source of investment income. The loan did not, and was not intended to, generate any investment income. The link between the investment income and interest expense is, by contrast, present in this case. In the Revenue Ruling as in *Julia R. & Estelle L. Foundation,* there was no nexus between the foundation's payment of interest on the funds borrowed and the foundation's gross investment income. Indeed, the gift of the funds to the university precluded use

of the funds to produce income. *Lykes v. United States,* 343 U.S. 118, 123-124 (1952). In this case, however, the proceeds of the debt underlying the bonds which were the source of petitioner's interest expense also generated and were intended to generate petitioner's gross investment income.

We hold, therefore, that petitioner's interest expense incurred on the debt underlying the bond issue while the bond proceeds were temporarily invested is an ordinary and necessary expense allowable pursuant to section 4940(c)(3)(A). The interest is deductible from petitioner's gross investment income in calculating its net investment income. Consequently, petitioner is not liable for any excise tax pursuant to section 4940 for the taxable years in issue.

*Decision will be entered for the petitioner.*