FRANCIS X. KAST AND ANNE E. KAST, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 13643–81, 14902–81, 14903–81,     Filed June 29, 1982.
        22428–81, 26661–81, 29082–81,
        29083–81, 1035–82.

---

[1]Cases of the following petitioners are consolidated herewith: Kenneth G. Heinz and Patricia B. Heinz, docket No. 14902–81; James E. Dahl and Louann J. Dahl, docket No. 14903–81; John E. Heffernan and Mary P. Heffernan, docket No. 22428–81; Warren H. Schumann and Maria T. Schumann, docket No. 26661–81; John J. Heck and Lois R. Heck, docket No. 29082–81; Martin Drobac and Becky K. Drobac, docket No. 29083–81; and Edward Durbin and Betty L. Durbin, docket No. 1035–82.

*Julian N. Stern*, for the petitioners.
*Donna I. Epstein*, for the respondent.

OPINION

SCOTT, *Judge*: On November 30, 1981, petitioners in the case of Francis X. Kast and Anne E. Kast, docket No. 13643–81, filed a motion for summary judgment which was set for hearing at San Francisco, Calif., on March 8, 1982. When the case was called for hearing, respondent filed a motion to consolidate the remaining above-entitled cases with the *Kast* case and consider the motion as going to all the cases. There was no objection on the part of any of petitioners since the facts in all these cases are substantially the same. The parties also agree that the Court may accept the facts as set forth in an affidavit in the *Kast* case submitted with petitioners' motion for summary judgment as being the facts in all the other cases, with the exception of the address of each petitioner, which is as alleged in the petition filed by each petitioner and admitted in the answers filed by respondent, and the number of shares of stock with respect to which each petitioner exercised an option which is material in each case only in the determination of the amount of the deficiency, if any.

We will therefore find the facts of the *Kast* case only, since the differences in the number of shares of stock owned by each

petitioner are not material to the consideration of the motion for summary judgment.[2] The issues raised by petitioners' motion for summary judgment are (1) whether payment received by each petitioner as a liquidating distribution with respect to shares of stock in Kaiser Industries Corp. (the corporation) which he had acquired pursuant to a qualified stock option is a disposition of his stock as defined in section 425(c),[3] and (2) if so, whether such disposition was a disqualifying disposition within the meaning of sections 421 and 422.

Each petitioner, except Warren H. Schumann and Maria T. Schumann, docket No. 26661–81, resided in California at the time of the filing of the petition. Petitioners Warren H. Schumann and Maria T. Schumann resided in Sao Paulo, Brazil, at the time of the filing of their petition with the Court. Each petition involves a deficiency determined by respondent for the calendar year 1977. Each docket involves a husband and wife who filed a joint Federal income tax return with the Internal Revenue Service Center, Fresno, Calif., for the calendar year 1977.

On May 27, 1976, each petitioner-husband (petitioner) exercised a qualified stock option that had been granted to him on September 7, 1973, to acquire a specified number of shares of common stock of the corporation. The option price was $7 per share. The price of the shares on the American Stock Exchange on the date of the exercise of the option was $13.25 per share.

On April 20, 1977, stockholders of the corporation, by majority vote, adopted a plan of complete liquidation. Each petitioner voted against adoption of the plan. Following adoption of the plan, the corporation distributed to each petitioner pro rata cash and assets having a fair market value of $14.30 per share on June 3, 1977, and $1 per share on October 3, 1977. Additional distributions were made pro rata to each petitioner by the corporation in 1978, 1979, and 1980 in the respective amounts of $3, $0.75, and $1.90 per share. The corporation retained a portion of its assets through April 11, 1980, when the balance of the corporation's assets amounting

---

[2]In two of the cases there is, in addition to the common issue, also an issue as to an addition to tax under sec. 6651(a). However, the action on the motion for summary judgment will also dispose of this issue.

[3]Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the year here in issue.

to $19,951,416, subject to any liabilities, was distributed to Touche, Ross & Co. as liquidation agent. The shares of the corporation held by each petitioner as a result of exercise of the qualified stock option were not redeemed in 1977 or at any time thereafter. Shares of the corporation were freely bought and sold through 1977 and thereafter and continued to be listed and. traded on the American Stock Exchange until March 21, 1980.

Section 421(a) provides (with an exception not here pertinent) that if a share of stock is transferred to an individual pursuant to the exercise of a qualified stock option, and certain requirements in respect of such transfer are met, no income shall result to the individual at the time of the transfer of the shares to him. Section 421(b) provides that if the transfer of a share of stock to an individual pursuant to his exercise of an option would meet these requirements except for a failure to meet any of the holding period requirements, any increase in the income of such individual or deduction from the income of the employer corporation for the taxable year in which such option is exercised attributable to such disposition, shall be treated as an increase in income or a deduction from income in the taxable year of such individual or the employer corporation in which such disposition occurs.

Section 422(a) provides (with an exception not here pertinent) that section 421(a) shall apply with respect to the transfer of a share of stock to an individual pursuant to his exercise of a qualified stock option if no disposition of such share is made by the individual within a 3-year period beginning after the transfer of such share.

Section 425(c) provides that, except for a joint tenancy acquisition, the term "disposition," as used in sections 421 through 425, includes a sale, exchange, gift, or a transfer of legal title, but does not include (1) a transfer from a decedent to an estate or a transfer by bequest or inheritance; (2) an exchange to which section 354, 355, 356, or 1036 (or so much of sec. 1031 as relates to sec. 1036) applies; or (3) a mere pledge or hypothecation.[4]

---

[4]Secs. 421(a) and (b), 422(a) and (c)(5), and 425(c) provide as follows:

SEC. 421. GENERAL RULES.

(a) EFFECT OF QUALIFYING TRANSFER.—If a share of stock is transferred to an individual in a transfer in respect of which the requirements of section 422(a), 423(a), or 424(a) are met—

Petitioners' first position in this case is that they did not make a disposition of their shares of stock within the meaning

---

(1) except as provided in section 422(c)(1), no income shall result at the time of the transfer of such share to the individual upon his exercise of the option with respect to such share;

(2) no deduction under section 162 (relating to trade or business expenses) shall be allowable at any time to the employer corporation, a parent or subsidiary corporation of such corporation, or a corporation issuing or assuming a stock option in a transaction to which section 425(a) applies, with respect to the share so transferred; and

(3) no amount other than the price paid under the option shall be considered as received by any of such corporations for the share so transferred.

(b) EFFECT OF DISQUALIFYING DISPOSITION.—If the transfer of a share of stock to an individual pursuant to his exercise of an option would otherwise meet the requirements of section 422(a), 423(a), or 424(a) except that there is a failure to meet any of the holding period requirements of section 422(a)(1), 423(a)(1), or 424(a)(1), then any increase in the income of such individual or deduction from the income of his employer corporation for the taxable year in which such exercise occurred attributable to such disposition, shall be treated as an increase in income or a deduction from income in the taxable year of such individual or of such employer corporation in which such disposition occurred.

SEC. 422. QUALIFIED STOCK OPTIONS.

(a) IN GENERAL.—Subject to the provisions of subsection (c)(1), section 421(a) shall apply with respect to the transfer of a share of stock to an individual pursuant to his exercise of a qualified stock option if—

(1) no disposition of such share is made by such individual within the 3-year period beginning on the day after the day of the transfer of such share, and

(2) at all times during the period beginning with the date of the granting of the option and ending on the day 3 months before the date of such exercise, such individual was an employee of either the corporation granting such option, a parent or subsidiary corporation of such corporation, or a corporation or a parent or subsidiary corporation of such corporation issuing or assuming a stock option in a transaction to which section 425(a) applies.

\* \* \* \* \* \* \*

(c) SPECIAL RULES.—

\* \* \* \* \* \* \*

(5) CERTAIN TRANSFERS BY INSOLVENT INDIVIDUALS.—If an insolvent individual holds a share of stock acquired pursuant to his exercise of a qualified stock option, and if such share is transferred to a trustee, receiver, or other similar fiduciary, in any proceeding under the Bankruptcy Act or any other similar insolvency proceeding, neither such transfer, nor any other transfer of such share for the benefit of his creditors in such proceeding, shall constitute a "disposition of such share" for the purposes of subsection (a)(1).

SEC. 425. DEFINITIONS AND SPECIAL RULES.

(c) DISPOSITION.—

(1) IN GENERAL.—Except as provided in paragraph (2), for purposes of this part, the term "disposition" includes a sale, exchange, gift, or a transfer of legal title, but does not include—

(A) a transfer from a decedent to an estate or a transfer by bequest or inheritance;

(B) an exchange to which section 354, 355, 356, or 1036 (or so much of section 1031 as

of section 421(b), 422(a), or 425(c) since they made no sale, exchange, gift, or transfer of legal title of their stock in the year 1977, the year here involved. In support of this position, petitioners point out that their shares of stock still remained outstanding and, even as of 1980, shares of the corporation were traded on the American Stock Exchange. It is respondent's position that, because of the provisions of section 331(a),[5] a disposition did occur since that section provides that "Amounts distributed in partial liquidation of a corporation * * * shall be treated as in part or full payment in exchange for the stock."

Petitioners argue that section 331 was put into the Code in the twenties solely to change the character of the income received in such a distribution from ordinary income to capital gain. Petitioners point out that, absent this provision, such distributions would be considered dividends taxable as ordinary income because they would be a "distribution of property made by a corporation to its shareholders" under the provision of section 316(a)(1). Petitioners cite certain statements in S. Rept. 398, 68th Cong., 1st Sess. (1924), 1939–1 C.B. (Part 2) 266, 274, in support of their position. In this report, the reason given for the provision (which subsequently became sec. 331) treating a distribution in full or partial liquidation as a payment in part or in full for the stock is that where a corporation liquidates and distributes its assets to its shareholder, the shareholder in effect surrenders his interest in the corporation and receives money in lieu thereof. According to petitioners, the extension of the provision to distributions in

---

relates to section 1036) applies; or

    (C) a mere pledge or hypothecation.

    (2) JOINT TENANCY.—The acquisition of a share of stock in the name of the employee and another jointly with the right of survivorship or a subsequent transfer of a share of stock into such joint ownership shall not be deemed a disposition, but a termination of such joint tenancy (except to the extent such employee acquires ownership of such stock) shall be treated as a disposition by him occurring at the time such joint tenancy is terminated.

[5] Sec. 331(a) provides as follows:

SEC. 331. GAIN OR LOSS TO SHAREHOLDERS IN CORPORATE LIQUIDATIONS.

    (a) GENERAL RULE.—

        (1) COMPLETE LIQUIDATIONS.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock.

        (2) PARTIAL LIQUIDATIONS.—Amounts distributed in partial liquidation of a corporation (as defined in section 346) shall be treated as in part or full payment in exchange for the stock.

partial liquidation was in order to treat the retirement of a portion of a taxpayer's stock as the sale of that stock and a distribution by a corporation in partial retirement of its capital stock as a return of capital, taxable only if, as, and to the extent it exceeds the shareholder's basis in his stock. See sec. 1001.

A reading of the complete legislative history of the addition of section 201(c) to the Revenue Act of 1924 (the predecessor of sec. 331) does not support petitioner's position. H. Rept. 179, 68th Cong., 1st Sess. (1924), 1939–1 C.B. (Part 2) 241, 250, likewise pointed out that the retirement of a part of capital stock is a transaction treated as a sale of stock and that where the corporation distributes an amount in partial retirement of capital stock "the amount thereof is to be considered as a return of capital." However, the Senate report stated with respect to the House bill that—

The House bill also treated such dividends as a sale of the stock, for the purpose of determining the amount of the gain, but provided that the amount of such gain should be taxed (1) as a dividend to the extent that it does not exceed the taxpayer's ratable share of the undistributed earnings of the corporation accumulated since February 28, 1913; (2) as a gain from the exchange of property to the extent that it exceeds such ratable share. It is recommended that this provision of the House bill be stricken out. [S. Rept. 398, 68th Cong., 1st Sess. (1924), 1939–1 C.B. (Part 2) 260, 274.]

Conf. Rept. 844, 68th Cong., 1st Sess. (1924), 1939–1 C.B. (Part 2) 300, recited this history and then stated:

The Senate amendment strikes out this provision with the result that a liquidating dividend is to be treated as a sale of stock and taxable as a gain from the sale of property; and the House recedes.

The District Court in *Brown v. United States*, 292 F. Supp. 527 (D. Ore. 1968), revd. on other grounds 427 F.2d 57 (9th Cir. 1970), specifically considered the argument made by the taxpayer in that case that no disposition of stock occurred within the meaning of the provision of the Code prior to its amendment in 1963 which contained the same provision as section 425(c) in the year in which amounts were distributed to him as part of the process of liquidation of the corporation. The District Court held (at page 529) that on the basis of section 331(a) "the term 'disposition' includes a liquidation." The Circuit Court, in reversing on another ground, stated (427 F.2d at 60):

Were section 421 drawn simply to require "a disposition" of shares as the event upon which disqualification turned, we might agree with the Government that "a disposition" occurred when M & M reached agreement with Simpson for a sale and complete liquidation of M & M, and we would then have to decide whether or not the date of such disposition was the date upon which the liquidating payment was placed in escrow, or some other time. * * *

The argument made by petitioners in these cases with respect to no disposition being made of the stock within the meaning of sections 421(a) and (b), 422(a), and 425(c) is the same argument that was not accepted by either the District Court or the Circuit Court in *Brown v. United States, supra.*

Petitioners further argue that their position is supported by the following provision of section 331(b):

Section 301 (relating to effects on shareholder of distributions of property) shall not apply to any distribution of property (other than a distribution referred to in paragraph (2)(B) of section 316(b)), in partial or complete liquidation.

It is petitioners' position that if section 331(a) was intended to mean that a liquidating distribution should be treated as in part or full payment in exchange for stock for all purposes of the Revenue Code, section 331(b) would be unnecessary since it would be obvious that the distribution could not be treated in the manner provided in section 301.

Respondent argues that the wording of section 331(a) is clear, and its caption, "General Rule," makes it clear that its provisions are applicable to all pertinent sections of the Code. Respondent sees no inconsistency in his interpretation of section 331(a) and the provisions of section 331(b), but views section 331(b) as merely clarifying the relationship between the two sections.

Petitioners cite a number of cases in which we have held that a collection of a note or bond or similar item does not constitute a sale or exchange, with the result that the amount collected in excess of the taxpayer's basis in the property does not qualify for capital gains treatment but is taxed as ordinary income. See secs. 1001 and 1222. In our view, these cases are not applicable here since there is a specific section of the Code prescribing exchange treatment for shareholders of amounts distributed in liquidation. Admittedly, the distribution here involved for the year 1977 was in partial liquidation of the

corporation since it was "one of a series of distributions in redemption of all of the stock of the corporation pursuant to a plan." Under section 346(a)(1), such a distribution is to be treated as a distribution in partial liquidation of the corporation. In our view, the distributions made in 1977 to petitioners must be treated as in part payment in exchange for each petitioner's stock. Sec. 331(a)(2). Because of the provisions of the statute, each petitioner's stock is in legal contemplation surrendered for the payments made by the liquidating corporation, even though the certificate continues to be outstanding.[6]

In our view, the fact that the stock of the corporation was listed on the American Stock Exchange until March 21, 1980, does not cause the payment in 1977 not to be treated as in exchange for the stock. Section 331(a) specifically provides that it is in payment for the stock. In *Hotel Equities Corp. v. Commissioner*, 546 F.2d 725, 728 (7th Cir. 1976), affg. 65 T.C. 528 (1975), the court stated that there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning. Following this rationale, the word "exchange" as used in section 331(a) has the same meaning as "exchange" as used in section 425(c). In that case, it was held that the statements in section 7502(a)(1), that the postmark date on the cover in which a return is mailed "shall be deemed to be the date of delivery" of the return, meant that the postmark date was to be considered as the delivery or filing date of the return for the purposes of all sections of the Code. This Court, in its opinion, stated, at page 535, that the provision of section 7502(a) is that the postmark date is "deemed" or is to be "treated" as the delivery date. In our view, under the provisions of section 331(a), the distribution made by the corporation to each of its stockholders in 1977 is to be treated as a partial payment in exchange for each

---

[6] 1 J. Mertens, Law of Federal Income Taxation sec. 9.80, at 219, states as follows:

"Sec. 9.80. *Necessity of Surrender of Stock.* The statute says that amounts distributed in complete liquidation or partial liquidation shall be "treated" as in full or part payment in 'exchange' for the stock. The statutory definition of partial liquidation is not in conflict with this. The distinction to be drawn is between the stock and the certificates evidencing the stock. If the distribution is liquidating, the stock is in legal contemplation surrendered in exchange therefor, although the stock certificates may continue outstanding. Physical retirement or cancellation of the certificates is not essential. [Fn. ref. omitted.]"

stockholder's stock for all purposes of the Code. See *United States v. Davis*, 397 U.S. 301 (1970); *Julia R. & Estelle L. Foundation v. Commissioner*, 70 T.C. 1, 6 (1978), affd. 598 F.2d 755 (2d Cir. 1979). We conclude that each petitioner made a disposition of his stock within the meaning of sections 421(b), 422(a), and 425(c) in 1977.

Petitioners argue, relying on the holding of the Court of Appeals for the Ninth Circuit in *Brown v. United States, supra*, that, if we conclude that each petitioner made a disposition of his stock in 1977, it was not a disqualifying disposition within the meaning of section 421(b). Respondent recognizes that the Court of Appeals for the Ninth Circuit in the *Brown* case held that a disposition of stock in a liquidation is not a "disqualifying disposition" since such a disposition is involuntary. Respondent agrees that the *Brown* case is not distinguishable in any way from the instant case. Respondent argues that the *Brown* case was incorrectly decided and therefore should not be followed by this Court. All of these consolidated cases, except one, are appealable to the Court of Appeals for the Ninth Circuit. Therefore, if we accept the position of both parties that the case of *Brown v. United States, supra*, is in no way distinguishable from the instant cases, it follows that we must decide all but one of these cases for petitioners, regardless of our view with respect to the issue. For this reason, we will discuss in some detail the *Brown* case, although we, too, have concluded that it is not distinguishable from the instant cases. Under the rule of *Golsen v. Commissioner*, 54 T.C. 742 (1970), affd. on other grounds 445 F.2d 985 (10th Cir. 1971), we follow the holding of the *Brown* case with respect to each petitioner herein except petitioners Warren H. Schumann and Maria T. Schumann (docket No. 26661–81).

The *Brown* case involved stock in a company which liquidated in 1956. Section 421(a)(1), (d)(4), and (f),[7] applicable to the

---

[7]Sec. 421(a)(1), (d)(4), and (f), I.R.C. 1954, as applicable to the year 1956, provides as follows:
SEC. 421. EMPLOYEE STOCK OPTIONS.

(a) TREATMENT OF RESTRICTED STOCK OPTIONS.—If a share of stock is transferred to an individual pursuant to his exercise after 1949 of a restricted stock option, and no disposition of such share is made by him within 2 years from the date of the granting of the option nor within 6 months after the transfer of such share to him—

(1) no income shall result at the time of the transfer of such share to the individual upon his exercise of the option with respect to such share;

\* \* \* \* \* \* \*

year 1956, insofar as here relevant contained substantially the same provisions as section 421(a) and (b), section 422(a), and section 425(c), except for the length of the required holding period. There was no substantive change in the provisions of section 421(a) and (f), applicable to the year 1956, relied on by the Circuit Court in the *Brown* case as supporting its conclusion that a disposition by liquidation was not a disqualifying disposition, and the provisions of section 421(a) and (b) and section 422(a), applicable to the year here in issue. The statute applicable in the *Brown* case referred to a "disposition of such share * * * made by him," and the statutes applicable to the year here in issue refer to a "disposition of such share * * * made by such individual." The Ninth Circuit held that the use of the words "made by him" showed that Congress intended only a voluntary disposition in which the taxpayer affirmatively acted to dispose of his stock to be a disqualifying disposition. All parties recognize that the changing of the words "made by him" to the words "made by such individual" is not a distinction that affects the holding of the *Brown* case. We agree. The Ninth Circuit stated that the legislative history of section 421 supported its interpretation since the statute

---

(d) DEFINITIONS.—For purposes of this section—

* * * * * * *

(4) DISPOSITION.—

(A) GENERAL RULE.—Except as provided in subparagraph (B), the term "disposition" includes a sale, exchange, gift, or a transfer of legal title, but does not include—

(i) a transfer from a decedent to an estate or a transfer by bequest or inheritance;

(ii) an exchange to which section 354, 355, 356, or 1036 (or so much of section 1031 as relates to section 1036) applies; or

(iii) a mere pledge or hypothecation.

(B) JOINT TENANCY.—The acquisition of a share of stock in the name of the employee and another jointly with the right of survivorship or a subsequent transfer of a share of stock into such joint ownership shall not be deemed a disposition, but a termination of such joint tenancy (except to the extent such employee acquires ownership of such stock) shall be treated as a disposition by him occurring at the time such joint tenancy is terminated.

* * * * * * *

(f) EFFECT OF DISQUALIFYING DISPOSITION.—If a share of stock, acquired by an individual pursuant to his exercise of a restricted stock option, is disposed of by him within 2 years from the date of the granting of the option or within 6 months after the transfer of such share to him, then any increase in the income of such individual or deduction from the income of his employer corporation for the taxable year in which such exercise occurred attributable to such disposition, shall be treated as an increase in income or a deduction from income in the taxable year of such individual or of such employer corporation in which such disposition occurred.

was enacted to give tax benefits to key corporate executives for the purpose of increasing corporate productiveness and thus stimulating the nation's economy. The Circuit Court cited, in support of its holding, S. Rept. 2375, 81st Cong., 2d Sess. (1950), 1950–2 C.B. 483, and H. Rept. 749, 88th Cong., 1st Sess. (1963), 1964–1 C.B. (Part 2) 125. The court stated that "The incentive rationale is obviously no longer served when the executive has chosen to dispose of his stock" (427 F.2d at 60). In a footnote, the court recognized, as had been contended by the Government, that neither is the incentive rationale any longer served when the corporation is liquidated. However, the court stated that this argument ignored the possibility of disincentives arising from disqualification in cases of liquidation since an executive might be disinclined to accept an attractive takeover offer because of this unfavorable tax consequence to him personally. The Circuit Court relied on the provisions of the statute recognizing some involuntary dispositions, such as the death of the option holder, as not constituting a disqualifying disposition, to support its conclusion that an involuntary disposition was not a disqualifying disposition. 427 F.2d at 60 n.5.

While we do not consider there to be any distinction between the *Brown* case and the instant cases, we respectfully disagree with the conclusion reached by the Ninth Circuit in the *Brown* case and the rationale of its opinion.

A qualified stock option can only be granted to an employee or officer who owns less than 5 or 10 percent of the stock of the corporation granting the option. See *Morris v. Commissioner*, 70 T.C. 959, 993 (1978); sec. 422(b)(7). For this reason, a controlling shareholder could not be the recipient of a qualified stock option, and any disincentive of an employee to vote his shares in the best interest of the corporation would not be controlling of the corporate action. However, more importantly, the statute as enacted by Congress contains specific provisions that certain dispositions will not be considered as disqualifying dispositions. Had the words "made by him" or "made by such individual" been intended to limit a disqualifying disposition to a "voluntary disposition" as held by the Ninth Circuit, these specific exceptions contained in the statute would be superfluous. None of the dispositions which are excepted by statute from "disqualifying dispositions," are

dispositions in which the individual actually receives money in exchange for his stock.[8] Section 422(c)(5) provides that a transfer by an insolvent individual to a trustee or fiduciary under the Bankruptcy Act does not constitute a disqualifying disposition. Section 425(c)(1) provides that a disqualifying disposition does not include (1) a transfer from a decedent to an estate or a transfer by bequest or inheritance; (2) an exchange to which section 354, 355, 356, or 1036 (or so much of sec. 1031 as relates to sec. 1036) applies; or (3) a mere pledge or hypothecation. However, the income tax regulation, in interpreting this section, states:

> However, a disposition of the stock pursuant to a pledge or hypothecation is a disposition by the individual even though the making of the pledge or hypothecation is not such a disposition. [Sec. 1.425–1(c)(1)(iii), Income Tax Regs.]

The legislative history of the Revenue Act of 1964, which made substantial changes with respect to qualified stock options, contains little discussion of the various exceptions provided for situations in which a disqualifying disposition will not be considered to have occurred. There is no discussion whatsoever distinguishing between "voluntary" as opposed to "involuntary" dispositions, nor is there any statement indicating that a further exception was intended. See H. Rept. 749, 88th Cong., 1st Sess. (1963), 1964–1 C.B. (Part 2) 125, 328; S. Rept. 830, 88th Cong., 2d Sess. (1964), 1964–1 C.B. (Part 2) 505, 595–596. When Congress has enumerated in the statute specific exceptions which would not be considered to constitute a disqualifying disposition of the stock acquired pursuant to exercise of the qualified stock option, further exceptions should not be read into the statute. Where an exception is made for corporate reorganizations to cover a situation involving only a substitution of a like-kind investment, the

---

[8]We are of course aware that in the exchange of securities or stock in one corporation for securities or stock of another corporation, or a distribution to a stockholder of stock or a security holder of securities in a controlled corporation (secs. 354 and 355), "other property" or "money" commonly referred to as "boot" may be received without disqualifying the gain on the exchange of stock or securities for stock or securities from nonrecognition (sec. 356). Under sec. 1036, dealing with exchange of stock for stock in the same corporation, gain is recognized to the extent of *other property or money* received (sec. 1031(b)). Under each of these sections, however, the exchange is basically a stock for stock exchange which is not disqualified by receipt of "boot."

inference is that the disposition of the stock in a complete or partial liquidation, where there is no continuity of investment and the shareholder receives money or other property in exchange for his stock, was not inadvertently omitted.

In a case involving a contention by a taxpayer that his disposition of stock pursuant to a purchase offer preparatory to a merger should not be considered a disqualifying disposition, the District Court, in *Bayer v. United States*, 382 F. Supp. 576, 580 (N. D. Ohio 1974), stated that the taxpayer had cited the case of *Brown v. United States*, 427 F.2d 57 (9th Cir. 1970), for the proposition that an involuntary disposition of option stock is excused from satisfying the statutory holding period and is not a disqualifying disposition under section 421. The taxpayer there was arguing, as petitioners here, that the disqualifying event is not the disposition itself, but the voluntariness of the act of disposing of the stock. The District Court quoted the portion of the *Brown* case which we have discussed in which the Circuit Court concluded that unless the taxpayer acted voluntarily in disposing of his stock, the disposition was not a disqualifying disposition. The Court stated that, having reviewed the legislative history of the statute, it concluded that there was no indication in that legislative history that Congress considered the matter of voluntariness of the disposition within the statutory holding period provided as affecting the tax consequences. Our review of the legislative history leads us to the same conclusion.[9] The District Court then pointed out as follows (pp. 580–581):

---

[9]The legislative history cited and relied on by the Circuit Court in *Brown v. United States*, 427 F.2d 57 (9th Cir. 1970), is contained in S. Rept. 2375, 81st Cong., 2d Sess. (1950), 1950–2 C.B. 483, 526–527, and in H. Rept. 749, 88th Cong., 1st Sess. (1963), 1964–1 C.B. (Part 2) 125, 311–332.

S. Rept. 2375 states with respect to employee stock options as follows:

(3) Employee Stock Options

Your committee's bill (section 220) establishes a new set of rules for the tax treatment of certain employee stock options. Such options are frequently used as incentive devices by corporations who wish to attract new management, to convert their officers into "partners" by giving them a stake in the business, to retain the services of executives who might otherwise leave, or to give their employees generally a more direct interest in the success of the corporation.

At the present time the taxation of these options is governed by regulations which impede the use of the employee stock option for incentive purposes. Moreover, your committee believes these regulations go beyond the decision of the Supreme Court in *Commissioner v. Smith*, 324 U.S. 177 (1945). The resulting uncertainty as to whether these regulations are in accordance with the law is an additional reason for legislative action at the present time.

The primary source for determining legislative intent is the statute on its face. Minnesota Mining and Manufacturing Co. v. Norton Co., 366 F.2d 238 (CA 6, 1966). There is nothing in the statutory language to indicate that

---

The rule applied under existing regulations is that an employee exercising an option to purchase stock from his employer corporation receives taxable income at the time the option is exercised to the extent of the difference between the market value of the stock at the time of exercise and the option (or purchase) price. The difference is taxed as ordinary income, rather than as a capital gain, on the theory that it represents additional compensation to the employee. Since the employee does not realize cash income at the time the option is exercised, the imposition of a tax at that time often works a real hardship. An immediate sale of a portion of the stock acquired under the option may be necessary in order to finance the payment of the tax. This, of course, reduces the effectiveness of the option as an incentive device.

Under your committee's bill no tax will be imposed at the time of exercise of a "restricted stock option" or at the time the option is granted and the gain realized by the sale of the stock acquired through the exercise of the option will be taxed as a long-term capital gain. Such treatment is limited to the "restricted stock option" for the purpose of excluding cases where the option is not a true incentive device. Options which do not qualify as "restricted stock options" will continue to be taxed as under existing law.

Ordinarily when an option is used as an incentive device, the option price approximates the fair market value of the stock at the time the option is granted. However, many stocks are not listed on exchanges and therefore the fair market value is difficult to determine. Hence, your committee's bill requires that to qualify as a "restricted stock option" the option price at the time of issuance must be 85 percent or more of the fair market value of the stock.

A "restricted stock option" is entitled to the treatment provided by the bill only if it is exercised while the grantee is an employee, or within a period of 3 months following the termination of his employment. The benefits of this provision extend to cases where the employee of a parent corporation receives an option to purchase stock in a subsidiary and where the employee of a subsidiary receives an option to acquire stock in a parent corporation.

The stock acquired under a "restricted stock option" must not be sold less than 2 years subsequent to the date on which the option is granted, and the stock purchased under the option must be held for a period of not less than 6 months. Thus, under the bill the employee will receive special treatment only if he remains in the employment of the company for a substantial period after the time when he acquires the option and actually invests in the stock of the company for a considerable period.

"Restricted stock options" cannot be transferable except by will or by operation of the laws of interstate succession.

The status of a "restricted stock option" will be denied if the recipient of the option owns directly or indirectly more than 10 percent of the combined voting power of all classes of stock of the employer corporation or of the parent corporation at the time the option is granted. This rule is intended to prevent the use of stock options by employers who seek merely to convert the earnings of a corporation from ordinary income into a capital gain.

Since the options which qualify for special treatment are regarded as incentive devices rather than compensation, no deduction is allowed the corporation under section 23(a) with respect to a transfer of stock pursuant to a restricted stock option.

The rules governing "restricted stock options" apply to options granted, modified, extended, or renewed after December 31, 1946, and exercised after 1949.

H. Rept. 749, in pertinent part, states:

SECTION 214. EMPLOYEE STOCK OPTIONS AND PURCHASE PLANS

(a) *In general.* Subsection (a) of section 214 of the bill revises part II of subchapter D of chapter 1 of the code, which deals with employee stock options. The revised part II consists

voluntariness is a factor in the legislative definition of "disposition". If anything, the broad language of the statute and the nature of the exclusions would indicate the contrary.

---

of an amended section 421 of the code and new sections 422, 423, 424, and 425. Section 421 as amended by the bill contains general rules applicable to options described in sections 422, 423, and 424. The new sections 422 and 423 relate to qualified stock options and employee stock purchase plans, respectively, and contain new rules to be applied in determining whether the transfer of a share of stock to an individual pursuant to his exercise of a stock option qualifies for tax treatment similar to that presently provided by section 421(a) of the code. The new section 424 continues the present treatment for restricted stock options granted before the effective date of the new rules. The new section 425 contains definitions and special rules common to the other provisions of the revised part II. The new sections, and the respects in which their provisions differ from the provisions of the existing section 421, are as follows:

＊ ＊ ＊ ＊ ＊ ＊ ＊

(b) *Effect of disqualifying disposition.*—Section 421(b) as amended contains rules relating to the tax effects of an individual's failure to satisfy the holding period requirement of section 422(a)(1), 423(a)(1), or 424(a)(1) with respect to a share of stock acquired pursuant to the exercise of an option with respect to which the other requirements of section 422(a), 423(a), or 424(a) are met. These rules are similar in effect to those contained in the existing section 421(f), and provide that any increase in the income of the individual or deduction from the income of his employer corporation, for the taxable year in which the exercise occurred attributable to the disposition, is treated as an increase in income or deduction from income in the taxable year of the individual or his employer corporation in which such disposition occurred.

＊ ＊ ＊ ＊ ＊ ＊ ＊

### SECTION 422. QUALIFIED STOCK OPTIONS

(a) *In general.*—The new section 422(a) provides new holding period and employment requirements which must be satisfied if an individual receiving a qualified stock option is to obtain the special tax treatment afforded by section 421(a) as amended. Generally, under present law, a share of stock transferred to an individual pursuant to his exercise of a restricted stock option must not be disposed of within 2 years from the date of the granting of the option nor within 6 months after the transfer of the share to the individual if the individual is to obtain the special tax treatment provided by section 421(a). As an additional prerequisite to the special tax treatment provided by the existing section 421(a), the individual is required to be an employee of the grantor corporation, a parent or subsidiary corporation of such corporation, or a corporation or a parent or subsidiary of such corporation issuing or assuming a stock option in a transaction to which section 425(a)(relating to corporate reorganizations, liquidations, etc.) applies at the time of the granting of the option and at the time the option is exercised, or within the 3-month period preceding the date of exercise. In comparison, the new section 422(a) requires stock acquired pursuant to the exercise of a qualified stock option (as defined in section 422(b)) to be held for at least 3 years after the stock is transferred to the individual and requires that the individual be an employee of a corporation described in the preceding sentence at all times beginning with the date the option is granted and ending on the day 3 months before the option is exercised if the special treatment afforded by section 421(a) as amended by the bill is to be obtained. Thus, section 422(a) provides that section 421(a) applies with respect to the transfer of a share of stock to an individual pursuant to his exercise of a qualified stock option (as defined in sec. 422(b)) if—

(1) no disposition of such share is made by such individual within the 3-year period beginning on the day after the day of the transfer of such share to the individual, and

(2) at all times during the period beginning with the date of the granting of the option and

In our view, since the provision of the statute that an employee does not receive income when he purchases stock of his corporate employer at less than its fair market value pursuant to a qualified stock option, removes from the definition of income an item that otherwise would clearly constitute income, it is to be narrowly construed. Any exceptions should be confined to those specifically provided for in the statute and not enlarged upon by a distinction nowhere appearing in either the statute or the legislative history.

Prior to the enactment of the predecessor of the present sections 421 through 425, when a stock option was given to an

ending on the day 3 months before the date of such exercise, such individual was an employee of either the corporation granting such option, a parent or subsidiary of such corporation, or a corporation or a parent or subsidiary corporation of such corporation issuing or assuming a stock option in a transaction to which section 425(a)(relating to corporate reorganizations, liquidations, etc.) applies.

For example, if an individual is granted a qualified stock option to purchase stock in his employer corporation on January 2, 1964, and such individual continues to be an employee of such corporation until he terminates his employment on June 6, 1965, he may exercise his option at any time from the date the option was granted to him through September 6, 1965. Assuming that such individual exercises his option on September 6, 1965, and that the stock is transferred to him on September 10, 1965, he must not dispose of the stock before September 11, 1968, if he is to qualify for the special tax treatment afforded by section 421(a).

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

*Certain transfers by insolvent individuals*

Paragraph (5) of section 422(c) provides an exception to the holding-period requirement of section 422(a)(1) with respect to certain transfers by insolvent individuals. If an insolvent individual holds a share of stock acquired pursuant to his exercise of a qualified stock option, and if such share is transferred to a trustee, receiver, or other similar fiduciary in any proceeding under the Bankruptcy Act or any other similar insolvency proceeding (including assignments for the benefit of creditors), neither such transfer, nor any other transfer of such share for the benefit of the insolvent individual's creditors in such proceeding, shall constitute a "disposition of such share" for purposes of section 422(a)(1). An individual whose liabilities exceed his assets or who is unable to satisfy his liabilities as they become due is treated as insolvent for purposes of section 422(c)(5). Although the transfer of a share of stock to or by the trustee or other fiduciary is not considered a disposition for purposes of section 422(a)(1), a transfer by the trustee (other than a transfer back to the insolvent individual) constitutes a sale or exchange of the stock for purposes of recognition of any capital gain or loss. If the share is transferred by the trustee back to the insolvent individual, any subsequent disposition of the share by the insolvent individual which is not made in respect of the insolvency proceeding and for the benefit of his creditors in such proceeding is treated as a disposition for purposes of section 422(a)(1).

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

(c) *Disposition.*—Section 425(c) continues the definition of the term "disposition" contained in paragraph (4) of the existing section 421(d). In general, a "disposition" includes a sale, exchange, gift, or transfer of legal title, but does not include a transfer from a decedent to an estate, a transfer by bequest or inheritance, an exchange to which section 354, 355, 356, or 1036 of the code (or so much of sec. 1031 as relates to sec. 1036) applies, or a mere pledge or hypothecation. No disposition occurs when an employee acquires stock in joint tenancy, or when he transfers stock into joint tenancy. However, a termination of such joint tenancy is a disposition except to the extent such employee acquires ownership of such stock.

employee, he either received income at the time of the granting of the option, if the option itself had a fair market value, or received income when the option was exercised, if the option price was less than the fair market value of the stock at that date. *Commissioner v. Lo Bue*, 351 U.S. 243 (1956). It is to be noted that for an option to be a qualified stock option, the option price must be approximately the amount of the fair market value of the stock at the date the option is granted, so that there would be no value to the option when it is granted, and it must be nontransferable. Therefore, absent the special provision with respect to qualified stock options, each petitioner in this case would have received ordinary income at the time of exercise of his option under the holding of the *Lo Bue* case at page 249:

It is of course possible for the recipient of a stock option to realize an immediate taxable gain. See Commissioner of Internal Revenue v. Smith, 324 U.S. 177, 181–182, 65 S. Ct. 591, 593, 89 L. Ed. 830. The option might have a readily ascertainable market value and the recipient might be free to sell his option. But this is not such a case. These three options were not transferable and Lo Bue's right to buy stock under them was contingent upon his remaining an employee of the company until they were exercised. Moreover, the uniform Treasury practice since 1923 has been to measure the compensation to employees given stock options subject to contingencies of this sort by the difference between the option price and the market value of the shares at the time the option is exercised. * * * Under these circumstances there is no reason for departing from the Treasury practice. The taxable gain to Lo Bue should be measured as of the time the options were exercised and not the time they were granted. [Fn. ref. omitted.]

The provisions of sections 421 through 425 grant a specific benefit to a selected group of taxpayers by permitting capital gain treatment to those taxpayers of amounts that would otherwise be taxable as ordinary income. For this reason, the provisions should be strictly construed.

For the reasons given above, we conclude that each petitioner herein made a disposition of the stock he acquired pursuant to the option received from the corporation within a period of less than 3 years from the date the shares were acquired by him pursuant to the exercise of his option. However, since an appeal from all of the cases except Warren H. Schumann and Maria T. Schumann (docket No. 26661–81) will be to the Court of Appeals for the Ninth Circuit, motion for summary judgment will be granted with respect to all of the cases except the

Schumann case. Petitioners' motion for summary judgment in the Schumann case will be denied.

> *Appropriate orders and decisions will be entered in all cases except Warren H. Schumann and Maria T. Schumann, docket No. 26661–81, and an appropriate order will be entered in that case.*

Reviewed by the Court.

WHITAKER, *J.*, dissenting: For the reasons and upon the rationale stated by the Court of Appeals for the Ninth Circuit in *Brown v. United States*, 427 F.2d 57 (9th Cir. 1970), I dissent.