**Warren H. SCHUMANN and Maria T. Schumann, Appellants,**

*v.*

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 87–1399.

United States Court of Appeals, District of Columbia Circuit.

Argued April 21, 1988.

Decided Sept. 23, 1988.

Julian N. Stern, was on the brief, for appellants.

David I. Pincus, Atty., Dept. of Justice, with whom William S. Rose, Jr., Asst. Atty. Gen., Gary R. Allen and Richard Farber, Attys. Dept. of Justice, Washington, D.C., were on the brief, for appellee. Michael L. Paup and Michael C. Durney, Attys., Dept. of Justice, Washington, D.C., also entered appearances for appellee.

Before RUTH BADER GINSBURG, D.H. GINSBURG, Circuit Judges, and MacKINNON, Senior Circuit Judge,

Opinion for the Court filed by Senior Circuit Judge MacKINNON.

MacKINNON, Senior Circuit Judge:

Appellants, Warren and Maria Schumann, appeal a decision of the United States Tax Court upholding the Internal Revenue Commissioner's assessment against them of a $7,943.54 deficiency in their 1977 tax payments.[1] The narrow issue posed by this case is whether a partial liquidation distribution paid to a taxpayer on stock option shares in a corporation, before the shares have been held for a sufficient period to qualify for the preferential tax consideration provided for capital gains, constitutes a disqualifying disposition of those shares within the meaning of sections 421–25 and 331(a)(2) of the Internal Revenue Code of 1954 ("the Code")[2] so as to deny the taxpayer the benefit of capital gains treatment for that distribution. We hold that such distribution constitutes a disqualifying disposition and therefore affirm the decision of the Tax Court.

## I. BACKGROUND

The facts of this case are not in dispute. On September 7, 1973, Warren Schumann was granted a qualified stock option to purchase shares of his employer, Kaiser Industries Corporation ("Kaiser"). On May 27, 1976, Schumann exercised his option and acquired such stock. The option price was $7.00 per share, while the price on the American Stock Exchange on the date of exercise was $13.25 per share.

On April 20, 1977, when the market price of Kaiser common stock was $18.33 per share, the shareholders adopted a plan of complete liquidation. Schumann voted against the plan. Following adoption of the plan, Schumann received a partial distribution of $14.30 per share on June 3, 1977 (when the market price was $17.50 per share), and $1.00 per share on October 3, 1977 (when the market price was $4.50 per share). In 1978, 1979, and 1980, Schumann received distributions of $3.00, $0.75, and $1.90 per share, respectively. Throughout the period that these distributions were being made, Schumann retained his stock certificates. Kaiser stock continued to be listed and traded on the American Stock Exchange until March 21, 1980 at which time the price was $2.13 per share. All of Kaiser's remaining assets were transferred to Touche, Ross & Co. as liquidation agent on April 11, 1980.

The Internal Revenue Commissioner determined that the relevant partial distributions to Schumann constituted a disposition of his shares within the meaning of section 425(c) of the Code. Since taxpayers seeking capital gains treatment under section 421 must hold their shares for three years, the Commissioner determined that Schumann was ineligible for such treatment and instead was subject to taxation at ordinary rates. Thus the Commissioner assessed a deficiency in Schumann's 1977 income tax of $7,943.54. Schumann petitioned the Tax Court, under sections 6213–14 and 7442 of the Code, for a redetermination of the deficiency. The Tax Court rejected Schumann's petition, and Schumann appealed to this court pursuant to section 7482 of the Code.

---

1. *Schumann v. Comm'r*, 52 T.C.M. (P–H) para. 83,035 (Jan. 18, 1983) (mem. opinion); *Kast v. Comm'r*, 78 T.C. 1154 (1982).

2. The Tax Reform Act of 1986 redesignated the "Internal Revenue Code of 1954" as the "Internal Revenue Code of 1986." However, because the years at issue in the present case antedate the 1986 Code, references herein to "the Code" are to the 1954 Code.

## II. Analysis

The foregoing facts present two issues. First, was the partial distribution to Schumann pursuant to Kaiser's liquidation plan a disposition within the meaning of section 425(c) of the Code? This section provides:

(c) Disposition.—

(1) In general.—Except as provided in paragraphs (2) and (3), for purposes of this part, the term "disposition" includes a sale, exchange, gift, or a transfer of legal title, but does not include—

(A) a transfer from a decedent to an estate or a transfer by bequest or inheritance;

(B) an exchange to which section 354, 355, 356, or 1036 (or so much of section 1031 as relates to section 1036) applies; or

(C) a mere pledge or hypothecation.

26 U.S.C. § 425(c). Second, if so, was it a disqualifying disposition under section 422(a)(1) which provides:

(a) In general.—Subject to the provisions of subsection (c)(1), section 421(a) shall apply with respect to the transfer of a share of stock to an individual pursuant to his exercise of a qualified stock option if—

(1) no disposition of such share is made by such individual within the 3-year period beginning on the day after the day of the transfer of such share....

26 U.S.C. § 422(a)(1).

We answer both questions in the affirmative.

### A. The Partial Liquidation Dividend

Schumann argues that because he retained physical possession of his Kaiser stock certificates after the partial liquidation distribution in 1977, the distribution could not be considered a disposition of the stock. Schumann's argument is inconsistent with the statute. Section 425(c) of the Code defines "disposition" as "includ[ing] a sale, exchange, gift, or a transfer of legal

title." (Emphasis added). In addition, section 331(a)(2) provides:

[a]mounts distributed in partial liquidation of a corporation ... shall be treated as in part or full payment in *exchange* for the stock.

26 U.S.C. § 331(a)(2). (Emphasis added). Since Schumann accepted a distribution in partial liquidation of Kaiser in 1977, such acceptance in accordance with the above statute constituted an "exchange" of a proportionate interest in his stock holdings in the corporation. He thus exchanged his stock within the meaning of section 331(a)(2) and disposed of it within the meaning of section 425(c).

Schumann's physical possession of the stock certificates until the liquidation process was completed in 1980 is legally irrelevant. The value of the shares decreased proportionately with each liquidating dividend that constituted an "exchange" as defined by the statute. There is no indication in the record that the certificates had any value once full distribution to Schumann was made pursuant to the liquidation plan. In partial liquidations under section 346(a)(1) of the Code, involving a "series of distributions in redemption" of shares as in this case, "shares are seldom [actually] surrendered as each distribution is made." H. Lidstone & A. Powers, *Federal Income Taxation of Corporations* 349 (5th ed. 1983). The ordinary meaning of "exchange" supports the conclusion that the distributions to Schumann flowed to him in reimbursement for his shares.[3] The mere fact that Schumann continued, even after liquidation had begun, to possess the stock certificates, whose market value depreciated to the extent of the partial distribution, does not bolster Schumann's argument that he actually had to dispose of his shares before the transaction constituted a disqualification for taxation purposes. The tax statute provides otherwise as set forth above.

### B. Disqualifying Disposition of Stock

Schumann argues that even if his receipt of the liquidation distribution is found to be

---

3. The *Random House College Dictionary* 460 (1973), for example, provides that to "exchange" is "to part with for some equivalent ... to transfer for a recompense; barter...."

a disposition, it should not be considered disqualifying, because Schumann voted against the liquidation plan and the disposition was not voluntary on his part. Schumann relies on *Brown v. United States*, 427 F.2d 57 (9th Cir.1970), which held that a disqualifying disposition under former section 421(f) of the Code (analogous to the provisions at issue here) required a "voluntary, affirmative act" of a shareholder, and would not result from a shareholder's "involuntary" disposition of his shares pursuant to a company's liquidation plan. In *Brown*, beneficiaries of a deceased taxpayer sought a partial refund of income taxes paid. Brown, as president and a director of a woodworking company, was granted a stock option which he exercised. The company was liquidated and its shareholders were paid pursuant to a liquidation plan. The Internal Revenue Service disallowed capital gains treatment for Brown's stock transaction, and found that a disqualifying disposition of Brown's stock had occurred.

The *Brown* court held that there was no disqualifying disposition, and that Brown remained entitled to capital gains tax treatment. The court held that "the term[s] 'disposition ... *made by him* [the taxpayer]' manifest[ ] Congress' intent that some affirmative, voluntary act of the option holder-taxpayer is required to constitute a disqualifying disposition." *Brown*, 427 F.2d at 60. (Emphasis added). The court reasoned that Congress' use of the words "made by him" evidenced an intention to include within the meaning of "disposition" only affirmative acts of the taxpayer to sell, exchange or transfer his interest.

The Ninth Circuit's interpretation of the statute as articulated in *Brown* is flawed and we therefore decline to adopt it. *Brown's* definition of disqualifying disposition is, as the Tax Court found, *Kast v. Comm'r*, 78 T.C. 1154 (1982), unduly restrictive.[4] Schumann's disposition of his

stock constitutes an "exchange" within the meaning of section 425(c), as pointed out above. In that statute Congress provided that a disqualifying "disposition *includes* a sale, exchange, gift, or transfer of legal title." (Emphasis added). Congress listed only a few types of transactions that could constitute disqualifying dispositions and did not provide an exhaustive list. Congress' use of the word "includes" supports the conclusion that a broad rather than a restrictive interpretation of this provision of the statute should apply rather than the narrow definition applied by the Ninth Circuit. Thus, "disposition," by being defined to "include," and not to "mean," includes all of its ordinary meanings, one of which includes the *"relinquishment"—"of anything."* *Webster's New International Dictionary, Second Edition* (1958). The taxpayer's brief is in error in stating that "disposition" is "defined to *mean* a 'sale, exchange, gift, or transfer of legal title' with certain stated exceptions." (Brief for Appellants at 4). (Emphasis added).

In addition, Congress expressly exempted certain involuntary dispositions (such as stock transfers made from decedents by bequest or inheritance) from the category of "disqualifying dispositions," but did not exempt dispositions made pursuant to corporate liquidation plans. 26 U.S.C. § 425(c)(1)(A), (B), (C). The *Brown* court erroneously inferred that Congress intended to exempt all arguably involuntary disposition because the statute exempts certain specified involuntary dispositions from the disqualifying disposition category. However, under the maxim *expressio unius exclusio alterius*, Congress' specific enumeration of certain exceptions indicates that no other exceptions were intended. *See American Methyl Corp. v. E.P.A.*, 749 F.2d 826, 835–36 (D.C.Cir.1984). As the United States District Court for the Northern District of Ohio held in *Bayer v. United States*, 382 F.Supp. 576 (N.D.Ohio 1974),

---

**4.** Under *Golsen v. Comm'r*, 54 T.C. 742 (1970), *aff'd on other grounds*, 445 F.2d 985 (10th Cir. 1971), the Tax Court was free to decide this case according to its own views, rather than those of the Ninth Circuit, because Schumann was living outside of the United States, and this court has jurisdiction of his appeal. This circuit has not

yet ruled on the issue. The Internal Revenue Service has itself for many years refused to follow *Brown*. See REV.RUL. 74–267, 1974–1 Cum.Bull. 102. Moreover, at least one other jurisdiction has rejected *Brown*. *See Bayer v. United States*, 382 F.Supp. 576 (N.D.Ohio 1974).

a similar case involving taxes due on stock option income, the interpretation in *Brown* is unduly restrictive:

> Having reviewed the legislative history of the statutes in question, this Court is unable to agree with the conclusion in the *Brown* decision. This Court finds no indication in the legislative history that Congress considered the matter of voluntariness of a disposition within the statutory holding period as affecting the tax consequences to be afforded the proceeds of a sale.... [A]ny sale, exchange, ... *or transfer of legal title* which does not fit one of the statutory exclusions is a disposition within the meaning of Sections 421 and 425.

382 F.Supp. at 580–81 (emphasis in original). As the *Bayer* court recognized, if Congress had wanted to create a statutory exclusion for involuntary dispositions of option stock, it would have done so, just as it did for the categories of dispositions that it specified.

*Brown* incorrectly interpreted the phrase "disposition ... made by him" in former section 422(a)(1) to exclude "exchanges" implicitly effectuated by virtue of the corporation's action and the *"relinquishment"* by the taxpayer of a portion of his rights in the shares. Neither the statute nor its legislative history supports an artificial distinction between voluntary and involuntary dispositions by shareholders. Schumann's acceptance of the liquidating distributions made pursuant to a duly adopted liquidation plan constitutes a "disposition ... made by him" whether or not he originally voted for adoption of the liquidation plan. *See* E. Baker & G. Sherman, 7–4th Tax Management (BNA), *Stock Options (Statutory)—Qualifications*, at AA–10 (1981) ("A nonvoluntary transfer made by an optionee is certainly a disposition 'made by him' within the literal meaning of these words."). When a shareholder receives a distribution in liquidation of his stock holdings, he has effectively "made" a disposition—an exchange as defined by the statute and a relinquishment within the ordinary meaning of "disposition."

CONCLUSION

Adhering to the plain import of the statute, we decline to override the considered judgments of the Commissioner and the Tax Court, and decide that the income taxpayer received in partial distribution of the stock is taxable as ordinary income and not at capital gains rates.

*Judgment accordingly.*